This unfortunate tangle over the setting of the trial-period in a sizeable renegotiation case comes to us on plaintiffs request for interlocutory review of the trial judge’s order of January 15, 1981, setting the trial for June 2, 1981, and his order of February 25, 1981, denying reconsideration of that time.[1] Plaintiffs’ counsel (who has been plaintiffs’ lead counsel since the case began in 1976) has another major trial commitment at that time and he states that he will be unable properly to represent plaintiffs unless the trial is postponed to September 1, 1981, and that obtaining new counsel at this late date will be most difficult, burdensome, and unsatisfactory. Defendant supports the trial judge’s orders.
This is a very large renegotiation case which has been before this court since July 26, 1976. It has had a long, active, and contentious history. [See 216 Ct.Ct. 422 (1978); 218 Ct.Ct. 696 (1978); 219 Ct.Cl. 626 (1979); 222 Ct.Cl. 513 (1979); 222 Ct.Cl. 565 (1980).] All seem now agreed that it should be tried in the current year but it is clear that the trial will not be simple, short, or easily prepared for. The crux of the trial judge’s ruling that it should be tried beginning June 2, 1981[2] is the trial judge’s view that the parties were expressly told over six months ago, by his letter of June 13, 1980, that trial would be held in June or July 1981 and that they should definitely reserve that period for the trial. It is undisputed that plaintiffs’ counsel undertook his other trial commitment after he received the letter of June 13, 1980, and the trial judge took that fact very much into account. Moreover, defendant’s main expert witness is a professor at George Washington University who cannot spare the necessary time for the trial (especially a trial outside Washington) during his period of academic commitment — which begins July 15, 1981, and continues through the fall term.[3] Defendant (and apparently the trial judge would concur) would seem to agree to hold the trial in *636 August but only if it were held in Washington (to accommodate the professor-witness). Plaintiffs think that time is too close to their counsel’s other trial. Also, plaintiffs definitely wish the trial to be held in Eau Claire (to accommodate the expected number of witnesses from plaintiff company, National Presto Industries, Inc., as well as plaintiff company’s officers, and to be near its files), and if its present counsel cannot represent it at the trial in June-August 1981, National Presto feels it must seek other counsel.
We think we understand fully the trial judge’s position that plaintiffs were sufficiently warned in June 1980, but we simply cannot join in that view. We do not think that the trial judge’s intention was made clear to plaintiffs’ counsel. The critical letter of June 13, 1980, seems to us quite ambiguous, rather than the clear expression the trial judge and defendant consider it to be. The substance of the letter starts out: "To avoid misunderstanding, counsel should be advised that this case is not now set for trial. I have simply reserved the period May-June 1981 for possible triar (emphasis added). The letter then goes on: "Many things remain to be done before a definite trial schedule can be established”, specifying various matters. The letter concludes:
"Upon consideration of plaintiffs’ and defendant’s said letters [the parties’ letters at that time on setting the trial], I have concluded to reserve the period June 2 -July 31,1981, or so much thereof as may be necessary, for trial of this case. The foregoing assumes a single session. Should events in the case ultimately develop otherwise, I will make every effort to accommodate the preferences of counsel. I remind counsel that the setting of any case for trial is contingent upon the availability of a suitable courtroom at the desired time and place.”
The ambiguity resides, we think, in (1) the definite and emphatic statement that the case is "not now set for trial”; (2) the use of the term "for possible trial”; (3) the statement that many things remained to be done "before a definite trial schedule can be established”; (4) the inconsistency between the times specified in the early paragraph reserving "the period May-June 1981” "for possible trial”, and the later statement that the trial judge was reserving "the *637 period June 2-July 31, 1981” "for trial of this case”; (5) the statement that, if events in the case "ultimately” developed "otherwise”, the trial judge would try to accommodate counsel’s preferences; and (6) the letter’s statement that the trial judge was "simply” reserving the May-June (or June-July) period (which might well be interpreted in context as reserving the time on his own personal calendar).
Plaintiffs’ counsel has sworn (in affidavit) that he did not consider the letter of June 13, 1980, as setting the case for trial in May-June (or June-July) 1981, as definitely reserving that period for actual trial, or as then precluding him from undertaking another trial at that time. He has also sworn that, if he had understood the letter the way the trial judge does, he would not have made the intervening commitment. In the light of the text of the letter, we have no adequate reason for disbelieving him (and the trial judge does not say that he disbelieves counsel). This is, to us, not a direct or negligent flouting of the trial judge’s directive but a bona fide, reasonable misunderstanding stemming, at least in substantial part, from the ambiguities we see in the letter of June 13, 1980. True, plaintiffs’ counsel might usefully have checked with the trial judge before undertaking the outside obligation, and certainly should have informed defendant and the trial judge shortly after that commitment was made.[4] But those possible missteps were minor and did not (so far as we can tell) truly inconvenience the other party or the trial judge. In any event, those lesser derelictions, if such they were, cannot now govern the setting of the trial.
Rather, the controlling circumstances must be these: (a) counsel did not act improperly or unreasonably in thinking that he was free to shoulder the other trial, or in so committing himself; (b) at this time it is highly improbable that the other trial (a very large one) can be rescheduled for another available time; (c) the case before us is a very large and complicated one, calling for adequate advance preparation and trial expertise; (d) present counsel for plaintiffs *638 cannot try both cases in the period May-July 1981, and apparently feels that he cannot properly prepare to try this case in August; (e) National Presto very strongly, and not unreasonably, wants the trial to be in Eau Claire, and defendant will agree to an August trial only if it is held in Washington; (f) National Presto clearly wishes to retain present lead counsel as its trial counsel and does not wish to proceed with his assistants or with a new counsel; (g) present counsel for plaintiffs has been lead counsel in the case from the beginning and has been actively involved with it; (h) if the case is tried in June-July 1981, National Presto will undoubtedly have to retain new trial counsel, not at all privy to the present case; and (i) the true needs of defendant’s professor-expert can, we think, be handled by having him testify separately in Washington after he has had a chance to read and consider the transcript of the testimony of the plaintiffs’ witnesses.[5]
This being the situation, as we see it, it would be an injustice to plaintiffs and their counsel to uphold the trial judge’s trial date, and on the other hand it would not be unfair to defendant or the trial judge to set the trial date for September 1, 1981 in Eau Claire, or later, with the professor’s testimony to be taken separately and later, in Washington,[6] after he has had the opportunity to review the written transcript of plaintiffs’ witnesses’ evidence.[7] In that way, we think that all interests will be reasonably satisfied and there will not be the undue disruption and unfairness which seems certain to follow on the trial judge’s order setting trial for June 2, 1981.
Defendant argues that a question of trial setting is not properly subject to review under Rule 53(c)(2)(ii). That may normally be true, but we have said enough to show that the present matter, with its special circumstances, falls within that provision. In our view, trial pursuant to the trial judge’s orders would, in sill probability, injure these plain *639 tiffs and their present counsel irreparably, and those orders are therefore subject to interlocutory review by us.
Accordingly, it is ordered that interlocutory review is granted of the trial judge’s orders of January 15, 1981, and February 25, 1981, those orders are reversed, and the trial of this case is to be set not earlier than September 1, 1981 (at a date which is agreeable to the trial judge and both parties), in Eau Claire, Wisconsin, with leave to defendant to have the testimony of Professor Lewis taken separately in Washington (at a time consistent with his academic commitments) after he has had full opportunity to review the transcript of plaintiffs’ case and witnesses.[8]
May 22, 1981
ON INTERLOCUTORY REVIEW
Before Friedman, Chief Judge, Davis and Kunzig, Judges.
This interlocutory appeal revisits our order of March 31, 1981, on the setting for trial of this large renegotiation case. In that order, we ruled that "the trial of this case is to be set not earlier than September 1, 1981 (at a date which is agreeable to the trial judge and both parties), in Eau Claire, Wisconsin, with leave to defendant to have the testimony of Professor Lewis taken separately in Washington (at a time consistent with his academic commitments) after he has had full opportunity to review the transcript of plaintiffs’ case and witnesses” (emphasis added). We added in a footnote that our order did not prevent "an earlier trial in August 1981, if agreed to by the parties and the trial judge, to be held in Eau Claire, provided that Professor Lewis’ testimony is taken separately in Washington under the circumstances stated” above (emphasis added). We further *640 added that the parties and the trial judge could agree on any other trial arrangement.
After our order, the matter of the trial-setting was discussed by the parties and the trial judge on April 21, 1981. It was agreed by all that the trial should commence in Eau Claire on July 20, 1982. Over the plaintiffs’ objection, however, the trial judge determined (as embodied in his order of the same day, April 21, 1981) to have the trial in separate places. While plaintiffs’ case-in-chief was ordered to be tried in Eau Claire, the defendant’s case was to be presented in Washington (beginning early in August 1982), and the place of presentation of plaintiffs’ rebuttal evidence was reserved for further ruling. Plaintiffs seek interlocutory review (on the ground of conflict with our order of March 31,1981) of the trial judge’s refusal to set the whole case for trial in Eau Claire (except for Professor Lewis’s testimony). (The trial judge has not certified his order under Rule 53(c)(2)(i)).
We grant interlocutory review, under Rule 53(c)(2)(ii), although we would not ordinarily review a trial judge’s setting of the place or places for trial, because the trial judge’s order is in direct conflict with our order of March 31st. That ruling, as we have pointed out, expressly required (except for Professor Lewis’s evidence) that the trial be held in Eau Claire — unless all parties and the trial judge agreed otherwise (which they did not do here). Moreover, the whole underpinning and presupposition of that order was that all of the trial (again except for the Lewis testimony) was to be held in Eau Claire, at plaintiffs strong and reasonable insistence which we held was not unfair to defendant or the trial judge. See order of March 31st, 634 n. 1, 637-38 n. 5.[1] Indeed, the trial judge had himself set the whole trial for Eau Claire (at an earlier date than we directed) and the defendant raised, at that time or on plaintiffs’ appeal of that order, no other objection than that Professor Lewis could leave only at specified times *641 because of his academic obligations. Our order, we thought, met the Lewis problem — the only one then raised by defendant — by directing that his testimony could be taken separately at a proper time in Washington after he had full opportunity to review plaintiffs case-in-chief.
The trial judge has given no reason for the bifurcation he has now ordered,[2] but defendant argues for the first time that Eau Claire would be very inconvenient for its 30 expected witnesses (not only for Professor Lewis) because of the difficulty of access to that place. Plaintiffs’ response is not at all insubstantial; it points out the variety of ways to reach Eau Claire, the relevant nearness of many of defendant’s witnesses to Eau Claire, the need for having its documentation handy, the lesser cost of having personnel stay in Eau Claire than in Washington, and the advantage of the nearness of National Presto’s shell lines (which, plaintiffs think, may play a significant role in the case). Whether or not plaintiffs’ factors (previously stated and supplemented in this appeal) would in themselves require that the whole case (except for Professor Lewis) be tried in Eau Claire, we think that defendant is precluded from raising its new objections at this stage because it did not, on the prior appeal, suggest them (or anything comparable) to us, as it could have,[3] or disagree with a full trial in Eau Claire if it were to be held at what it regarded as the proper time. Though we might not ordinarily overturn a trial judge’s initial decision as to where segments of a trial were to be held, we cannot, in these circumstances, countenance a new trial-setting which goes directly contrary to our prior order, without any suggestion of a new or changed circumstances or any proper excuse for not earlier requiring trial in different places.
For these reasons, it is ordered that the entire trial (except for the Lewis testimony) is to be held in Eau Claire, beginning July 20, 1982, with such interim suspensions as the trial judge considers appropriate. Again, this order does not preclude any other trial arrangement which is agreeable to both sides and to the trial judge.

 The trial is to be held, at plaintiffs’ strong request, in Eau Claire, Wisconsin, the seat of plaintiff corporation, National Presto Industries, Inc.

 It is expected that the trial will probably take a month, perhaps six weeks.

 Apparently, defendant wishes this witness to be aware of at least a major portion of plaintiffs’ case before the witness testifies himself.

 It is not clear when the other commitment was made, but it was not relayed to the trial judge until November 24, 1980 when the latter recieved a letter from counsel. Apparently, there was no oral discussion of the trial-date matter between June 13, 1980 and the trial judge’s receipt of the November 24th letter. Defendant’s counsel was informed by plaintiffs very shortly before November 24th.

 We have already concluded that item (a) is correct. The record before us contains affidavits and material showing the correctness of items (b) through (h), and we have no ground for disbelieving them. There is nothing in the record showing that item (i) is incorrect.

 At a time consonant to his academic schedule.

 It will be sufficient for the professor to review the transcript. He is not the judge of credibility and need not actually be present at the trial.

 This order does not prevent an earlier trial in August 1981, if agreed to by the parties and the trial judge, to be held in Eau Claire, provided that Professor Lewis’ testimony is taken separately in Washington under the conditions stated in the text. Nor does this order preclude any other trial arrangement which is agreeable to both parties and the trial judge.

 Plaintiffs told us, on that appeal, that it wanted trial at Eau Claire because (a) several of its expected witnesses were working officials of National Presto Corporation (located in that city) who could not, without difficulty and undue interruption, appear elsewhere; (b) plaintiffs wished these and other National Presto personnel to help in cross-examination of defendant’s witnesses; and (c) National Presto’s papers and documentation were located in Eau Claire.

 Nor for reserving the place of plaintiffs rebuttal evidence.

 The alleged difficulty of access to Eau Claire was, of course, known earlier in 1981 when the first request for interlocutory review came to us.