This renegotiation case comes before the court on plaintiffs’ motion for leave to substitute a bond as security. After considering the motion, without oral argument, the court concludes that the motion should be granted.
In May 1976, the Renegotiation Board determined that plaintiffs had realized $25.4 million in excessive profits on negotiable contracts performed in fiscal years 1967 through 1972. Under the Renegotiation Act of 1951 (50 U.S.C. App. § 1218, Supp. V 1975), a person who wishes to seek a redetermination in this court of a Renegotiation Board determination of excessive profits has a choice of paying the amount awarded or filing a bond with this court. See Rule 26 of the Rules of this court. Plaintiffs elected to make payment, and on July 2, 1976, paid the Department of the Army under protest $11,076,995.15, which included interest at 8% percent from June 20, 1976 to date of payment.
Plaintiffs assert that their initial election to make payment instead of posting bond was based on assurances of defendant’s counsel that 3 years was a realistic estimate of the duration of the litigation in this court, but that it now appears that the case will take far longer than anticipated. They urge that it would be unfair to deny them the continued use of this money until the litigation ultimately is concluded.
Plaintiffs point out that the defendant itself previously recognized the propriety of the action plaintiffs now propose. In October 1977, defendant requested from this court a one-year extension to complete its pretrial audit. Plaintiffs objected on the ground that the delay would be prejudicial since plaintiffs, by paying the excessive profits the Renegotiation Board determined, had lost the use of the funds for the duration of the litigation. Defendant’s answer was that "Should the. plaintiffs now desire to post a bond in lieu of the net payment, they need only advise the defendant and the appropriate steps will be promptly taken.” The defendant, however, now opposes plaintiffs’ request on various grounds.
The defendant’s opposition is unconvincing. It offers no explanation for its change in position since the fall of 1977. The government will be no worse off for the future if the plaintiffs substitute a bond than it would have been if the *628 plaintiffs originally had followed that course or had made the substitution in 1977, in accordance with the government’s suggestion. The purpose of the bond is to protect the government by insuring that if the court agrees with the Renegotiation Board’s determination of excessive profits, the government will be paid. The government will lose none of its protection if the plaintiffs substitute an adequate bond for the money they previously paid.
We see nothing in either the Renegotiation Act or the Rules of this court that would preclude us from granting the relief the plaintiffs seek. Moreover, there is no convincing reason why the plaintiffs should not be permitted to substitute a bond for their previous payment, and thereby save the $847,658 in interest they estimate they would lose if this litigation were to continue for another 3 years.
Plaintiffs also request that the court specify a basis for determining interest on any excessive profits the court may determine the plaintiffs have realized. There is no occasion, however, for us to decide that question at this stage of the proceeding.
it is, therefore, ordered that plaintiffs’ motion for leave to substitute a bond as security is granted, and the defendant is ordered, after the plaintiffs file a proper bond with this court, promptly to refund to plaintiffs the $11,076,995.15 they previously have paid.
Defendant’s motion for rehearing and suggestion for rehearing en banc were denied April 6, 1979.
May 11, 1979
In connection with seeking a redetermination by this court of excessive profits determined by the Renegotiation Board, the plaintiffs in July 1967 paid under protest to the Department of the Army $11,076,995.15, instead of posting a bond for that amount. More than 3 years later the plaintiffs, asserting that the case was taking longer to complete than they had anticipated when they elected to pay cash rather than post a bond, moved to substitute a bond as security. Over the objection of the United States, on February 16, 1979, we granted the motion and ordered the United States, after a proper bond had been filed, *629 promptly to refund to the plaintiffs the $11,076,995.15 they had paid. On April 6, 1979, we denied the defendant’s motion for rehearing or rehearing en banc.
On April 23, 1979, the plaintiffs filed a motion for an order directing the defendant to refund the $11,076,995.15 within 10 days. They stated that on that date they had informed defendant’s attorney that they were filing a bond, and that in response to their inquiry as to when they would be paid, the attorney stated that "nothing had been done to arrange for repayment, and she refused to make any time commitment or estimate whatsoever as to when repayment would be accomplished.”
The government opposes the motion to compel refund and seeks a stay of our order of February 16, 1979, until July 5, 1979. Attached to the opposition are affidavits from government fiscal officers stating that there is no statutory authority for refund of the money because it had been paid into the Treasury, and consequently, that no disbursing officer would be willing to certify the payment. The defendant further states that additional time would be required to devise some procedure for making repayment or to obtain legislation authorizing it. The request for a stay until July 5, 1979, is made to give the Solicitor General the opportunity to determine whether the defendant should file a petition for a writ of certiorari seeking review of our order directing refund.
I.
The government states that the $11,076,995.15 was paid into the Treasury under 50 U.S.C. App. § 1215 (b)(7), which provides that "All money recovered by way of repayment or suit under this subsection [50 U.S.C. App. § 1215, governing proceedings before the Renegotiation Board] shall be covered into the Treasury as miscellaneous receipts.” We doubt that the $11,076,995.15 the plaintiff paid was "recovered by way of repayment or suit.” Section 1215(b)(7) seemingly deals with money paid to the government at the termination of a renegotiation proceeding. It would not appear to cover payment made in lieu of posting a bond and under protest, in connection with litigation instituted in this court to secure a redetermination of the amount, if any, of excessive profits that the plaintiffs realized.
*630 The statute governing such suit (50 U.S.C. App. § 1218) provides that the suit will stay the order of the Renegotiation Board only if a bond is filed. Rule 26(d) of the Rules of this court, however, permits the posting of collateral "as security for a bond in lieu of a surety,” which Rule 26(c) otherwise requires. When plaintiffs paid the $11,076,995.15, this was in lieu of the bond they could have filed. The receipt of that money by the Army can hardly be viewed as having been "recovered by way of repayment or suit.” It was neither "recovered” nor was it a "repayment.” It thus appears that the Army’s action in covering this money into the Treasury was erroneous.
Refund also would seem authorized by 31 U.S.C. § 725q-1, which appropriates for the Treasury Department amounts necessary to meet expenditures for "other collections erroneously received and covered.”
In sum, we do not think the difficulties in making the refund to the plaintiffs are as serious or insurmountable as the defendant believes. We are certain that an imaginative approach to the problem can surmount them. Indeed, the government apparently saw no difficulty in making a refund in the fall of 1977 when, in seeking a one-year extension of time for completing its pretrial audit, it told both the plaintiffs and this court: "Should the plaintiffs now desire to post a bond in lieu of the net payment, they need only advise the defendant, and the appropriate steps will be promptly taken.”
On the other hand, the foregoing discussion indicates that it will take time until the machinery for accomplishing the refund can be worked out. We could not properly order the defendant to make refund within 10 days, as plaintiffs request.
II.
Although the defendant has 90 days from our order of April 6, 1979, denying rehearing within which to file a petition for a writ of certiorari, there is no reason why the Solicitor General requires the full period to decide whether to do so. It has been nearly 3 months since we initially granted the plaintiffs’ motion to substitute a bond and more than a month since we denied rehearing.
We think that a stay of our order until June 4, 1979, will give the Solicitor General ample time within which to *631 examine this case and to make a decision, and that if he decides not to file a petition, an additional 20 days will give defendant sufficient opportunity to arrange for a refund.
it is ordered that our order of February 16, 1979, directing refund be stayed to and including June 4,1979. If by that date the Solicitor General determines to file a petition for a writ of certiorari, and if the petition is filed by July 5, 1979, this stay shall continue until the Supreme Court of the United States has determined the petition. If by June 4, 1979, the Solicitor General has not determined to file a petition, the defendant shall refund to the plaintiffs by June 25, 1979, the $11,076,995.15 they previously paid.
On June 25, 1979 plaintiff filed a notice of full satisfaction of the court’s order dated February 16, 1979.
On July 11, 1979 there was filed a General Accounting Office certificate of settlement in amount of $11,076,995.15.