The plaintiff in this case, which the United States District Court for the District of Columbia transferred to this court under 28 U.S.C. § 1406(c), seeks backpay for and reinstatement to the position at the Library of Congress from which he resigned in January 1979, and other relief. The defendant has moved to dismiss the case on the ground that the petition does not state a claim within our jurisdiction. We agree with the government’s substantive position but, for the reasons explained below, we conclude that the appropriate disposition is not dismissal but retransfer of the case to the district court.
The plaintiff began his employment with the Library of Congress in January 1973, as a Library Aide/Messenger at grade GS-3. In June 1973, he was promoted to Library Technician/Desk Attendant at grade GS-4. He served in that position until September 1976, when he began to attend college full time. He requested and was given a change to part-time status, originally at grade GS-2. He continued to work part time while attending college, being promoted to grade GS-4.
The petition alleges that, following graduation from college in May 1977, the plaintiff "sought to resume full-time work at the Library in a position commensurate with his education and ability”; that between May 1977 and December 1978 the plaintiff applied but was rejected for "numerous posted job openings” "including several for *572 which he was fully qualified and for which the Library recognized that he was fully qualified”; and that between May 1977 and January 1979, the plaintiff "was never able to return to full-time status at the Library, despite his qualifications, seniority, and desire to do so.” The plaintiff further alleges that during 1978 he "became increasingly frustrated by his inability to obtain a position,” and that he also "began to suffer physical injury to his knee joints because of the constant walking and climbing required in his job. Finally, despairing of ever obtaining a promotion, plaintiff resigned his position at the Library in January, 1979.” The plaintiff states that he was unemployed from that time until in August 1979 he obtained a position as a Library Aide at the Howard University Library.
The petition states that after his resignation, the plaintiff learned that during his employment at the Library the Federal Bureau of Investigation had investigated the plaintiff, and that the investigation, focusing on the plaintiffs political affiliations and activities, indicated that the plaintiff was a member of the Young Socialist Alliance, which allegedly advocates the overthrow of the United States government. The plaintiff asserts that the Library denied his applications for promotions on the basis of his political affiliations and activities as reported by the FBI, despite the fact that none of the positions for which the plaintiff applied was security-sensitive.
The petition seeks the plaintiffs reinstatement as an employee of the Library "in the position to which he would have advanced if he had not been unlawfully discriminated against,” actual and punitive damages of $100,000, and a cease-and-desist order barring the defendant from investigating the political affiliations of the plaintiff and all present and prospective Library employees and from basing employment decisions on the political affiliations and activities of applicants.
As noted, the plaintiff originally filed the suit in the district court. On motion of the government, the district court transferred the case to this court. The district court expressed doubt whether it had jurisdiction over the plaintiffs claim for damages in excess of $10,000, and concluded that "[cjomplete relief is thus available for the *573 plaintiff in the Court of Claims, and transfer is 'in the interest of justice.’ ”
1. This court has no jurisdiction to grant backpay and reinstatement to someone who voluntarily terminated his federal employment by resignation. The Back Pay Act, 5 U.S.C. § 5596 (1976), which is the only statute that might authorize such relief (see Smith v. United States, 228 Ct. Cl. 168, 170-71, 654 F.2d 50, 52 (1981)), covers only "an unjustified or unwarranted personnel action.” A voluntary resignation is not such an act.
The plaintiff argues, however, that his resignation was not voluntary but was coerced. The "firmly established” principle in this court is that "[t]he element of volunta-riness is vitiated only when the resignation is submitted under duress brought on by Government action.” Christie v. United States, 207 Ct. Cl. 333, 337-38, 518 F.2d 584, 587 (1975). Moreover, "[d]uress is not measured by the employee’s subjective evaluation of a situation. Rather, the test is an objective one.” 207 Ct. Cl. at 338, 518 F.2d at 587.
Under this standard the plaintiff has not shown that he was coerced into resigning. The fact that the plaintiff resigned in frustration over his inability to obtain a promotion does not show that his resignation was involuntary. The plaintiffs decision to terminate his employment was a voluntary act brought about by dissatisfaction with his employment situation and not because of pressure the government put on him to resign. Indeed, no one in the government suggested that he should resign. We have held that even resignations submitted to avoid threatened termination for cause were voluntary. See Christie, 207 Ct. Cl. at 338-39, 518 F.2d at 588.
To whatever extent the government’s failure to give the plaintiff a permanent appointment or to promote him may have stemmed from its concern about his political affiliations and activities {see p. 572 infra), that factor would not have changed the character of the resignation from voluntary to involuntary. The government’s motive for so treating the plaintiff, which it did not communicate to the plaintiff — indeed, the plaintiff states that he did not know of the FBI investigation until after his resignation— did not change the character of the resignation.
*574 The plaintiff argues that Roskos v. United States, 213 Ct. Cl. 34, 549 F.2d 1386 (1977), controls the present case. Roskos is distinguishable. There the plaintiff resigned after he had been improperly reassigned from one city to another. In holding that the resignation was involuntary, the court ruled that the reassignment was invalid and that "[t]he case thus falls within the principle that a resignation or retirement is vitiated if it results from coercive acts of the Government which leave the employee with no practicable alternative.” 213 Ct. Cl. at 40, 549 F.2d at 1389.
In the present case, the plaintiff did not resign in response to any order from the Library changing his place of work, but left his position because of dissatisfaction with his progress. Indeed, the court pointed out in Roskos that "not every unpleasant working arrangement or distasteful set of alternatives constitutes duress or renders an otherwise voluntary act involuntary.” Id., 549 F.2d at 1389.
To the extent that the plaintiff may be contending that he was coerced into resigning because his work injured his knee joints, there is no indication that he brought this matter to the attention of his superiors or requested another assignment that did not cause this problem. In this aspect of the case, therefore, the plaintiff is precluded from challenging his resignation as involuntary because of his failure to exhaust administrative remedies. See, e.g., Peters v. United States, 208 Ct. Cl. 373, 377-78, 534 F.2d 232, 235 (1975); Christie v. United States, 207 Ct. Cl. at 338, 518 F.2d at 587.
2. Since the plaintiff had not stated a claim for reinstatement or backpay within our jurisdiction, a fortiori, his claim for promotion to the higher grade to which he asserts he would have been promoted had he not been discriminated against, also fails. Peters v. United States, 208 Ct. Cl. at 377, 534 F.2d at 234, and cases there cited. See also United States v. Testan, 424 U.S. 392, 402 (1976).
Although the plaintiff believes that he was unjustly denied a promotion, he has not shown the "clear legal entitlement to such promotion” that is the only basis upon which we may order promotions. Peters, 208 Ct. Cl. at 377, 534 F.2d at 234. 2 U.S.C. § 140, upon which the plaintiff relies, does not establish his entitlement to a higher grade. *575 That provision, which provides that "[a]ll persons in and about. . . [the] Library of Congress . . . shall be appointed solely with reference for their fitness for particular duties,” merely establishes a general guideline for the Library to follow in its personnel practices. It does not establish the plaintiffs entitlement to a particular position.
3. The plaintiffs claim for damages of $100,000, based upon the Library’s asserted violations of his first amendment rights because the Library allegedly investigated and based its refusal to promote him upon his political affiliations and activities, similarly does not state a claim cognizable in this court. In a case such as this, where "the claimant is not suing for money improperly exacted or retained,” the issue is
whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491, although some separate general principle— arising, for example, from tort law — might lead to a remedy in another forum or under some special relief provision.
Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 607, 372 F.2d 1002, 1008—09 (1967). See United States v. Testan, 424 U.S. at 400.
Except for the taking clause of the fifth amendment, this court has not treated other constitutional provisions as mandating compensation for the damage their violation allegedly caused. See, e.g., Featheringill v. United States, 217 Ct. Cl. 24, 32-33 (1978); Walton v. United States, 213 Ct. Cl. 755 (1977); Muehlen v. United States, 209 Ct. Cl. 690 (1976). In Featheringill, we specifically held that we cannot entertain a claim for damages based upon the government’s alleged violation of the plaintiffs first amendment rights. The plaintiff there contended that the government refused to rehire him as a teacher after his one-year appointment had ended because of his circulation of a letter concerning the school at which he taught. After rejecting the plaintiffs claim under the Back Pay Act, the court held that "[bjecause the First Amendment, standing alone, does not expressly command the payment of money ... we are *576 without jurisdiction to consider plaintiffs constitutional claim.” 217 Ct. Cl. at 33. The court pointed out that it was irrelevant to the jurisdictional inquiry that the "plaintiff might well have a compelling First Amendment claim within the jurisdiction of a federal district court.” Id. at 32 (emphasis in original). The plaintiff has not shown that that decision was unsound, and although he has criticized it and suggested that we reconsider it, he had not sought a hearing en banc.
Since we conclude that the plaintiffs claim for damages, based on the government’s alleged violation of his first amendment rights, does not state a claim within the jurisdiction of this court, it is unnecessary to consider his further claim that we order the defendant to cease and desist from investigating or taking into consideration in employment decisions the political affiliation or activities of the plaintiff or of other Library employees, actual or potential.
4. The plaintiff contends that because the government argued in the district court that this court had jurisdiction to grant him adequate relief, the government is estopped from questioning our jurisdiction. A party, however, always may question the jurisdiction of a court. The government’s representation to the district court that we have jurisdiction does not bar it from now asserting a contrary proposition. In any event, the court always has the right — indeed, the obligation — to consider its own jurisdiction.
Unfortunately, this is not the first time that we have had to criticize this practice by the government. See, e.g., Clark v. United States, 226 Ct.Cl. 658, cert. denied, 454 U.S. 833 (1981). It is unfair to the litigant and leads to an unnecessary waste of money and judicial resources for the government to urge another court to dismiss a case on the ground that we have adequate jurisdiction to decide the issues and then, after the other court has transferred the case here, to seek dismissal on the ground of our lack of jurisdiction.
In the present case the district court’s conclusion that this court has jurisdiction to grant the plaintiff full relief followed the government’s representation to that effect, and presumably to some extent was based upon it. We have now determined that we do not have that jurisdiction. In the *577 circumstances, we conclude that rather than dismiss the case, as the government urges, retransfer of the case to the district court (for whatever action it considers appropriate) pursuant to 28 U.S.C. § 1406(c) would be in the interest of justice.
In view of our conclusions and our disposition of this case, we do not believe that oral argument, which the plaintiff has requested, would be appropriate.
The case is retransferred to the United States District Court for the District of Columbia.
Plaintiffs motion for rehearing or suggestion for rehearing en banc was denied January 15,1982.