**Angelita MONTALVO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 736–87C.**

United States Claims Court.

Aug. 22, 1989.

---

W. Briscoe Swan, Houston, Tex., for plaintiff.

William K. Olivier, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, Director, and Helene M. Goldberg, Asst. Director, Washington, D.C., for defendant.

OPINION

ANDEWELT, Judge.

In this civilian pay action, plaintiff, Angelita Montalvo, a Mexican–American female, who had been separated from employment with the Veterans Administration (the VA), seeks reinstatement to the position of Associate Chief Nurse with attendant back pay. This action is presently before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff disputes defendant's motion but requests that in the event this court concludes that it lacks jurisdiction, the court transfer the case to the United States District Court for the Western District of Texas. For the reasons explained herein, defendant's motion is sound and plaintiff's claim shall be transferred.

*Facts* [1]

Plaintiff served in a variety of nursing positions during her employment at the VA. She applied for reassignment to the position of Associate Chief Nurse on a number of occasions but was never selected for any of the available openings. On September 17, 1978, plaintiff was reassigned, over her objections, from the position of nurse instructor to the position of staff nurse. After this reassignment, Ms. Montalvo left work and ultimately was separated from the VA, effective March 1, 1979, for abandoning her position.

Prior to her separation, Ms. Montalvo filed a discrimination complaint with the VA. The VA denied her complaint but plaintiff appealed to the Equal Employment Opportunity Commission (the EEOC). In a final decision dated December 2, 1981, the EEOC reversed the VA's decision. The EEOC concluded that Ms. Montalvo had established that both her reassignment to staff nurse and her nonselection as Associate Chief Nurse were the products of discrimination based on national origin. To remedy this discrimination, the EEOC ordered the VA, as follows:

1. Cancel the reassignment for [Ms. Montalvo] which was effectuated on September 17, 1978, and award, retroac-

---

**1.** The facts material to resolution of defendant's motion to dismiss are not in dispute.

tively, to [Ms. Montalvo] the position of Associate Chief Nurse;

2. Award to [Ms. Montalvo] back pay at the Intermediate Grade, Level 4 beginning September 17, 1978 to December 3, 1978 including in this award all pay adjustments and within grade increases due an employee at that grade level during the time period specified;

3. Award to [Ms. Montalvo] back pay at the appropriate grade and step of Associate Chief Nurse from December 3, 1978 and ending on the effective date of [Ms. Montalvo's] reinstatement, including in this award all pay adjustments and within grade increases due an employee at that grade level during the time period specified;

4. Award to [Ms. Montalvo] all sick, annual and any other leave entitlements which she would have earned had she been employed as an Associate Chief Nurse during the period beginning December 3, 1978, and ending on the effective date of [Ms. Montalvo's] reinstatement;

5. Deduct from the back pay award: (a) any salary [Ms. Montalvo] received from her agency employment during the period beginning September 17, 1978 and ending March 1, 1979; (b) any salary [Ms. Montalvo] received from any source of employment in which she was engaged during the period of March 1, 1979 to the effective date of her reinstatement with the agency.

In a March 19, 1982, letter to Ms. Bowman of the EEOC Office of Review and Appeals, the VA inquired as to a perceived ambiguity in the EEOC's final decision and sought an "interpretation as to precisely what the Commission is ordering the agency to do in this case." The purported ambiguity involved whether the EEOC order requiring retroactive appointment and back pay covered only the time period up through plaintiff's separation on March 1, 1979, or whether the order also required voiding the separation and reinstating Ms. Montalvo to the position of Associate Chief Nurse with back pay running up through the date of her present reinstatement.

The VA argued that the retroactive appointment and back pay should last only up through plaintiff's separation on March 1, 1979. The VA noted that in pursuing her discrimination complaint, plaintiff had never alleged that her separation was discriminatory and plaintiff, in fact, had entered a stipulation during the hearing before the VA Complaints Examiner that the discharge was not an issue. Consequently, neither the VA Complaints Examiner nor the EEOC made any findings concerning plaintiff's separation, and, therefore, the VA never had an opportunity to present evidence supporting its decision to separate her. The VA contended that paragraph one of the relief ordered in the EEOC's decision was consistent with the EEOC intending to resolve only the issues of reassignment and nonselection, but that paragraphs three, four, and five produced an ambiguity. The VA stated that "[t]hese paragraphs specifically deal with the calculation of back pay, leave entitlements, and offsets. Even though this relief is appropriate in the instant case, the dates upon which they rest appear to suggest, without specifically saying, that the agency must also reinstate [Ms. Montalvo]."

The VA requested that if Ms. Bowman concluded that present reinstatement was intended, the VA's letter should be referred to the appropriate EEOC officials and treated as a formal request to reopen under the provisions of 29 C.F.R. § 1613.235(a)(2) and (a)(3). The VA, in effect, acknowledged that its March 19 letter was delivered beyond the 30–day time period set forth in the regulations for requests to reopen EEOC decisions. 29 C.F.R. § 1613.235(b). The VA argued, however, that it nevertheless would be reasonable to reopen the matter because "the order of the Commission did not state that this agency should take action to reemploy complainant, and any close reading of the record would indicate that this would not be a proper subject of remedy in this case."

The VA received a letter dated July 6, 1982, that purported to be Ms. Bowman's response to the VA's March 19 letter. The response concluded that the EEOC decision was "very clear" and that the EEOC con-

sideration of the subsequent discharge was evidenced in paragraph five of the relief ordered, where the EEOC obliged the VA to "[d]educt from the back pay award ... any salary [plaintiff] received from any source of employment in which she was engaged during the period of March 1, 1979, to the effective date of her reinstatement with the agency." With respect to the stipulation before the VA Complaints Examiner that discharge was not an issue, Ms. Bowman's letter stated that the VA "hearing examiner did not interpret this stipulation to mean that all relief ceased on the date of termination, but rather that if [plaintiff] had received the position denied her then she would not have been terminated." The letter concluded that the issue of whether the hearing examiner's interpretation of the stipulation was legally sound was moot because the agency's request was not filed within 30 days of the EEOC decision.

In an unusual turn of events, in a February 7, 1983, letter, the EEOC Office of Review and Appeals disavowed Ms. Bowman's July 6, 1982, letter as "not authorized" and "not express[ing] the view of this Commission."[2] The February 7 letter proceeded to interpret the December 2, 1981, EEOC decision in a manner directly contrary to the interpretation offered in the July 6 letter. The February 7, 1983, letter stated:

> We agree with you that Ms. Montalvo's discharge/termination was *not* an issue before this Commission and thus she need not be offered reinstatement to agency employment. We have determined that "reinstatement" as used in our decision was meant to define the period of time for which the agency was to compensate [Ms. Montalvo]. The record only supports remedial compensation from the date of the discriminatory act, i.e., her reassignment and nonpromotion, to the last day of employment with the agency, i.e., March 1, 1979.

(Emphasis in original.)

Based on this second "clarification," the VA retroactively reassigned plaintiff to the position of Associate Chief Nurse, effective September 17, 1978, the date she was reassigned to a staff nurse position, and changed the separation papers to reflect separation from the position of Associate Chief Nurse instead of staff nurse. The VA concluded that no back pay was due because the positions of staff nurse and Associate Chief Nurse received identical salaries.

On December 2, 1987, plaintiff filed the instant suit seeking reinstatement and back pay. Plaintiff contends, in effect, that the relief ordered in the EEOC's December 2, 1981, decision did not relate exclusively to the time period up through March 1, 1979, but required the VA to reinstate her to the position of Associate Chief Nurse and to grant her back pay up through the date of her reinstatement. In its motion to dismiss for lack of jurisdiction, defendant contends that the district court has exclusive jurisdiction over plaintiff's claim.

### Analysis

#### I.

▮ Plaintiff's discrimination complaint against the VA was processed through the VA and the EEOC pursuant to the provisions of Section 717 of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16. In *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), after a detailed analysis of Section 717, the Supreme Court concluded that the administrative and judicial scheme created therein provides the "exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969. That scheme does not grant jurisdiction to the Claims Court over claims of discrimination in federal employment.

Plaintiff does not dispute that this court lacks such jurisdiction but contends that the case at bar should not be characterized as a federal employment discrimination claim. Rather, plaintiff contends that dis-

---

2. The Office of Review and Appeals explained that Ms. Bowman was on leave at the time of the July 6 letter and she did not return thereafter.

crimination already has been established and is not in dispute, and that the present action should be characterized as a suit to enforce the EEOC's "clear and unambiguous" decision of December 2, 1981. Plaintiff argues that this court has jurisdiction to entertain such a suit pursuant to the Tucker Act, 28 U.S.C. § 1491. But this argument interprets too narrowly both the scope of Section 717 exclusivity with respect to discrimination claims and the nature of plaintiff's claim.

The *Brown* Court based its conclusion that Section 717 provides the "exclusive judicial remedy" for federal discrimination claims on its review of the pertinent legislative history and the terms of the statute. The Court interpreted the legislative history as indicating a congressional intent "to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." 425 U.S. at 829, 96 S.Ct. at 1966. As to the terms of the legislation, the Court focused on the comprehensiveness of the statutory scheme. The Court summarized that scheme, as follows:

Section 717(a) provides that all personnel actions affecting federal employees ... "shall be made free from any discrimination based on race, color, religion, sex, or national origin."

Section 717(b) and (c) establish complementary administrative and judicial enforcement mechanisms designed to eradicate federal employment discrimination. Subsection (b) delegates to the Civil Service Commission [now Equal Employment Opportunity Commission] full authority to enforce the provisions of subsection (a) "through appropriate remedies, including reinstatement or hiring of employees with or without back pay," to issue "rules, regulations, orders and instructions as it deems necessary and appropriate" to carry out its responsibilities under the Act, and to review equal employment opportunity plans that are annually submitted to it by each agency and department.

Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. . . .

Sections 706(f) through (k), 42 U.S.C. §§ 2000e–5(f) through 2000e–5(k) (1970 ed. and Supp. IV), which are incorporated "as applicable" by § 717(d), govern such issues as venue, the appointment of attorneys, attorneys' fees, and the scope of relief. Section 717(e), finally, retains within each governmental agency "primary responsibility to assure nondiscrimination in employment. . . ."

*Id.* at 829–32, 96 S.Ct. at 1966–68.

Based on the comprehensiveness of this scheme, the *Brown* Court rejected the contention that Section 717 supplemented rather than replaced pre-existing judicial relief in discrimination actions. The Court stated, as follows:

The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due weight to the fact that unlike these other supposed remedies, § 717 does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers.

*Id.* at 832–33, 96 S.Ct. at 1968 (footnote omitted).

Plaintiff is not, as she suggests, merely asking for enforcement of a "clear and unambiguous" order by the EEOC. In its February 7, 1983, letter, the EEOC Office of Review and Appeals indicated that the term "reinstatement" as used in paragraph five of the December 2, 1981, EEOC decision was meant to define "the period of time for which the agency was to compensate" plaintiff and that "the record only supports remedial compensation" up through plaintiff's last day of employment with the VA, *e.g.*, March 1, 1979. Therefore, Ms. Montalvo is asking this court, *inter alia*, to determine that the February 7 letter is not correct and is not otherwise

binding on this court, the EEOC, or the VA.

To make such a determination, this court, in effect, would have to explore, interpret, and apply the rules and regulations of the EEOC as they impact plaintiff's discrimination claim and thereby, in effect, determine the relief to be awarded to plaintiff on her claim. But this task is beyond this court's jurisdiction as defined in *Brown.* There simply is no suggestion that this court should serve such a function in Section 717's "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829, 96 S.Ct. at 1966.

In sum, in *Clark v. United States,* 212 Ct.Cl. 590 (1977), the Court of Claims stated that "[i]t is clear from the decision in *Brown* ... that any jurisdiction this court may have had over back pay claims based on racial discrimination has been divested by the Equal Employment Opportunity Act of 1972." That divestment is broad enough to encompass plaintiff's claim and, hence, this court lacks subject matter jurisdiction herein.

## II.

■ The absence of jurisdiction in this court does not leave plaintiff without a forum in which to pursue her claim—she can pursue her claim in district court. Defendant contends that plaintiff's proper remedy herein was to bring suit in the appropriate district court pursuant to Section 717(c), which provides that "an employee or applicant for employment, if aggrieved by the final disposition of his complaint ... may file a civil action as provided in section 2000e–5 of this title." Section 2000e–5(f)(3) places jurisdiction over such suits in the district courts. In response to this argument, plaintiff expressed concern that jurisdiction may not lie under Section 717(c) because she views "the final disposition" for Section 717 purposes as the December 2, 1981, final decision of the EEOC. Since her interpretation of the December 2 decision results in satisfactory relief, plaintiff is concerned that she may not be "aggrieved" as required in Section 717(c).

But it is not apparent that plaintiff's interpretation of what constitutes "the final disposition" of her discrimination complaint under Section 717 is necessarily correct. Since plaintiff has not received a reappointment and back pay, and the most recent statement from the EEOC Office of Review and Appeals is that she is not entitled to that relief, it certainly is arguable that plaintiff is "aggrieved" because the final disposition of her claim by the EEOC did not result in the relief sought in her complaint. In any event, however, even if a district court action under Section 717(c) did not lie, plaintiff acknowledges that, in the alternative, she could seek a writ of mandamus from the district court aimed at forcing the EEOC and the VA to grant the relief plaintiff contends is required by Section 717 and the December 2 decision.

■ Thus, the district court, rather than the Claims Court, is the appropriate forum for the relief plaintiff seeks. Where, as here, a court determines that it lacks subject matter jurisdiction over a claim, it should transfer the case to a court of competent jurisdiction whenever the transfer "is in the interest of justice." 28 U.S.C. § 1631. Herein, a determination has been made that plaintiff was the subject of discrimination based on her national origin. It clearly "is in the interest of justice" for this court to transfer this action to a court of competent jurisdiction so that plaintiff's claim for relief from that discrimination can be heard.

### *Conclusion*

For the reasons set forth above, the Clerk of the Court is directed to enter judgment transferring this case to the District Court of the Western District of Texas.

IT IS SO ORDERED.