**Doris Marie LEE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 94–520C, 94–557C.**

United States Court of Federal Claims.

April 26, 1995.

Claudia Barber, Laurel, MD, for plaintiff.

Virginia K. DeMarchi, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

MEROW, Judge.

Plaintiff seeks relief for an alleged breach of a settlement agreement between Plaintiff and her employer, the National Institutes of Health ("NIH"), concerning race discrimination claims made pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"). Two motions are before the Court: (1) Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), and (2) Plaintiff's Motion for Refund of Filing Fee.

## *FACTS*

Plaintiff, Doris Marie Lee, is employed by NIH as a procurement assistant. In May, 1990 and June, 1991 Plaintiff filed administrative complaints against NIH and the agency to which it belongs, the Department of Health and Human Services ("HHS"), alleging race and sex discrimination as well as retaliation. On August 23, 1993 Plaintiff and the agency executed an agreement settling these administrative complaints. Under the agreement, the agency agreed to: (1) promote Plaintiff retroactively to procurement assistant, (2) pay Plaintiff retroactive wages for this position at the GS–7 rate, (3) reassign Plaintiff to a GS–7 purchasing agent position, with eligibility to gain upgraded promotion potential made available in the future without competition, (4) change her performance rating from "fully successful" to "excellent," (5) remove a memorandum of reprimand from her personnel folder, and (6) pay attorney's fees, among other things. Compl.Exh. B ("Settlement Agreement") at 1, 2. The settlement required agency compliance within 90 days of execution.

Plaintiff alleges that the agency (1) breached the settlement agreement, Compl. ¶ 7, and (2) continued to discriminate against her on the basis of her race. Compl. ¶¶ 8, 9. She alleges that the agency failed to "... pay retroactive wages to her at the GS–7, step 4 rate of pay, including pay adjustments to which she was entitled, from the time of her promotion on August 26, 1990, to present," as the agreement required. Compl. ¶ 7; Settlement Agreement ¶ 2. Additionally, she alleges the agency failed to adjust her 1990 performance rating from "Fully Successful" to "Excellent" and "... increase the payment of an Employee Performance Management System award from $0 to $172." Compl. ¶ 7; Settlement Agreement ¶ 6.

## *PROCEDURAL HISTORY*

On January 6, 1994, Plaintiff filed a complaint in the Circuit Court for Montgomery County, Maryland, alleging breach of contract, tortious interference with contract, and race discrimination. Plaintiff sought specific enforcement of the agreement, as well as

compensatory and punitive damages. On March 25, 1994 Defendant petitioned to remove the case to the United States District Court for the District of Maryland ("District Court") pursuant to 28 U.S.C. § 1441 and § 2679(d). Plaintiff did not contest removal.

Once in District Court, Defendant moved to dismiss the Complaint, asserting that Count I—alleging breach of settlement contract and race discrimination—should be dismissed for failure to state a claim or, alternatively, be transferred to this Court pursuant to 28 U.S.C. § 1631. Defendant asserted that jurisdiction was lacking because Plaintiff had not taken her discrimination claim to its administrative conclusion prior to filing suit. Alternatively, Defendant argued that if any court retained jurisdiction at that stage, it would be the United States Court of Federal Claims as damages exceeded $10,000, the jurisdictional damage limit on actions for money damages brought against the United States in federal district court set by 28 U.S.C. § 1346(a)(1). By its order of March 31, 1994 ("Transfer Order"), the District Court dismissed Count II of the complaint, and ordered that Count I be transferred to this Court.

The transfer of the case to this Court, by the District Court clerk, was effected on August 22, 1994—approximately five months subsequent to the entry of the Transfer Order. By her affidavit filed in this matter, Plaintiff's attorney contends that her law clerk contacted the District Court on several occasions to monitor the status of the case prior to transfer. Counsel states in her affidavit that the District Court clerk's office informed her law clerk that the court had dismissed Plaintiff's complaint in its entirety and that her client would have to file the case anew in the United States Court of Federal Claims, if she wished to continue to seek relief. Barber Affid. ¶ 4.

Apparently relying on this advice, Plaintiff's attorney filed a new complaint, Docket No. 94–520C, with this Court on August 10, 1994, and paid the $120.00 filing fee.[1] On August 22, 1994, less than two weeks subsequent to the filing of Plaintiff's new complaint with this Court, the District Court transferred its certified record, concerning the remaining count of Plaintiff's January 6, 1994 Complaint, to the Clerk of the Court of the United States Court of Federal Claims. This transferred case was assigned Docket No. 94–557C. On August 25, 1994 an order was issued in the transferred case, Docket No. 94–557C, consolidating the matter with the previously filed Docket No. 94–520C.

Subsequent to consolidation, on September 23, 1994, Plaintiff filed her Motion for Refund of Filing Fee. Plaintiff then filed a motion for leave to file an amended version of this motion on October 27, 1994. The Court granted this motion, and by order of November 7, 1994, requested briefing regarding the Court's authority to issue the requested refund. Defendant opposed Plaintiff's motion, asserting that a showing had not been made pursuant to RCFC 84(a)(1), that Plaintiff had paid all necessary fees in the transferor court, as required by the rule. Plaintiff submitted a copy of a receipt reflecting her payment of a complaint filing fee at the Circuit Court for Montgomery County, Maryland as an exhibit to her subsequent reply memorandum.

On November 10, 1994 Defendant moved to dismiss for lack of subject matter jurisdiction as per RCFC 12(b)(1). Defendant asserts that both Plaintiff's discrimination claim as well as any right to damages arising from failure to adhere to an agreement settling Plaintiff's earlier discrimination claim constitute statutory actions pursuant to Title VII, over which this Court lacks jurisdiction.

For the reasons set forth below, Defendant's Motion To Dismiss is granted and Plaintiff's Motion For Refund Of Filing Fee is denied.

## DISCUSSION

### I. Defendant's Motion to Dismiss

▇▇▇ When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the facts alleged in the complaint are considered true and

---

1. This complaint is substantially similar to the original January 6, 1994 complaint, but does not contain Count II, the count dismissed by the March 31, 1994 District Court Order.

correct for purposes of the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). Allegations unsupported by factual assertions will not withstand a motion to dismiss. *Markey v. United States*, 27 Fed.Cl. 615, 620 (1993), (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). However, the plaintiff bears the burden of establishing subject matter jurisdiction. *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 748 (Fed.Cir.1988); *Catellus Development Corp. v. U.S.*, 31 Fed.Cl. 399, 404 (1994).

■ Basic to this jurisdictional determination are limitations with respect to the jurisdiction conferred on the United States Court of Federal Claims. *Bath Iron Works Corp. v. United States*, 27 Fed.Cl. 114, 122 (1992), *aff'd* 20 F.3d 1567 (Fed.Cir.1994). Relief against the United States requires a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Therefore, statutory provisions providing consent to suit against the United States in this Court must be explicit and are narrowly construed. *Bath Iron Works*, 27 Fed.Cl. at 122.

■ Plaintiff asserts jurisdiction pursuant to the Tucker Act, which waives sovereign immunity with regard to actions

> ... founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort ... 28 U.S.C. § 1491(a)(1).

However, the Tucker Act does not, in itself, create a substantive right of recovery against the United States. *Testan*, 424 U.S. at 398–99, 96 S.Ct. at 953; *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). Rather, a claim for damages must arise from a violation of the Constitution, a statute or regulation, or contractual rights which may be fairly interpreted as requiring the payment of compensation from the United States. *Testan*, 424 U.S. at 401–02, 96 S.Ct. at 954–55; *Dixon v. United States*, 17 Cl.Ct. 73, 77 (1989).

### A. *Dismissal*

Plaintiff presents two claims which arise from the alleged discrimination by her employer in violation of Title VII. One is a new race discrimination claim. *See* Compl. ¶¶ 8, 9. The other is for breach of an agreement settling an earlier discrimination claim. Compl. ¶ 7.

■ Title VII is the comprehensive, exclusive and pre-emptive remedy for federal employees alleging discrimination. *Brown v. General Servs. Admin.*, 425 U.S. 820, 829, 832, 96 S.Ct. 1961, 1966, 1967, 48 L.Ed.2d 402 (1976) (Title VII provisions for judicial review pre-empt more general remedies sought in federal district court); *Montalvo v. United States*, 17 Cl.Ct. 744, 748 (1989); *Fausto v. United States*, 16 Cl.Ct. 750, 753 (1989). With Title VII, Congress established a system of procedural mechanisms by which employees may pursue discrimination claims. 42 U.S.C. §§ 2000e–2000e–17. It permits the filing of a *de novo* "civil action" in federal district court once administrative remedies have been exhausted. 42 U.S.C. §§ 2000e–5, e–16 (federal district court jurisdiction over Title VII actions); *see also Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 825–26, 110 S.Ct. 1566, 1569–70, 108 L.Ed.2d 834 (1990) (state courts have inherent authority to adjudicate claims under 42 U.S.C. § 2000e–5(f)(3)). Nowhere within this statutory framework did Congress refer to the possibility of bringing a cause of action before the United States Court of Federal Claims.

■ The presence of a comprehensive, precisely-drawn statutory scheme providing for judicial review in another forum will pre-empt Tucker Act jurisdiction in this Court. *See e.g. United States v. Fausto*, 484 U.S. 439, 454–55, 108 S.Ct. 668, 677, 98 L.Ed.2d 830 (1988) (Civil Service Reform Act); *LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed.Cir.1995) (Civil Service Reform Act); *St. Vincent's Medical Center v. United*

*States,* 32 F.3d 548, 550 (Fed.Cir.1994) (Medicare Act); *Chin v. United States,* 890 F.2d 1143, 1146 (Fed.Cir.1989) (where Congress has specified that suit may be brought in district court under Postal Reform Act, Congress could be said to intend to preclude suit in United States Court of Federal Claims).

▮ Accordingly, the United States Court of Federal Claims lacks jurisdiction to entertain a basic Title VII race discrimination claim, such as that found in paragraphs eight and nine of Plaintiff's complaint. This claim must be dismissed. *See Montalvo,* 17 Cl.Ct. at 748–49; *See also Dixon,* 17 Cl.Ct. at 77 (1989); *Fausto,* 16 Cl.Ct. at 752–53; *Ayala v. United States,* 16 Cl.Ct. 1, 4 (1988).

▮ The remaining claim, Plaintiff's breach of contract action to enforce her settlement agreement with the agency, requires further analysis. The issue Defendant's motion to dismiss presents in this regard is whether the asserted breach of an agreement settling a job discrimination complaint against the United States amounts to an "action or proceeding" under Title VII—over which the United States Court of Federal Claims lacks jurisdiction—or amounts to a contractual action within the Court's Tucker Act jurisdiction.

Apparently presuming that usage of the phrase "breach of contract" in her pleading generates Tucker Act jurisdiction, Plaintiff never directly addresses whether breach of settlement agreement allegations constitute a statutory cause of action. Defendant's briefed position is that breach of an agreement executed to settle a dispute concerning a right created pursuant to Title VII creates the basis for a Title VII statutory proceeding, and not a breach of contract action. The issue has been addressed previously on two occasions, first in *Fausto v. United States,* 16 Cl.Ct. at 753, and again in an unpublished opinion in *Bowden v. United States,* No. 93–456C, slip op. (Fed.Cl. Aug. 3, 1994), which follows the ruling in *Fausto.*

*Fausto* presented the United States Court of Federal Claims with facts substantially similar to those of the instant case. In *Fausto,* the plaintiff filed an action to enforce a settlement agreement resolving discrimination claims he brought against his former employer, the United States Department of Agriculture. *Fausto,* 16 Cl.Ct. at 753. The United States argued that a breach of settlement claim constituted an action pursuant to Title VII rather than a contractual action covered by the Tucker Act. *Id.* The court agreed, finding plaintiff's settlement agreement to be "... the direct result of his discrimination claim...." because it could not have arisen but for the existence of the Title VII statutory scheme. *Id.*

The United States District Court for the District of Columbia came to the same conclusion in *Robles v. United States,* No. 84–3635, 1990 WL 155545 (D.D.C. July 20, 1990). In *Robles* the government argued, as Defendant in this case argued alternatively in the District Court, that plaintiff's breach of Title VII settlement claim was properly categorized as an action in contract against the United States with damages in excess of $10,000. *Id.* at *3. As such, the government asserted that transfer to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1346(a)(2) was warranted. *Id.* After conducting a thorough investigation of relevant case law involving agreements settling Title VII claims, the court noted,

> ... Courts [sic] addressing the issue have pointed to the importance of conciliation to Congress' chosen scheme for redressing unlawful discrimination in the workplace. As a result, the cases conclude that Congress must have wanted rights arising under such an important part of the Title VII scheme to be enforceable as Title VII rights rather than through mere contract actions. *Id.* at *4.

Consequently, the *Robles* court concluded that, although such actions may "seem to fit" as contracts against the United States under 28 U.S.C. § 1346(a)(2), they are properly treated as statutory Title VII claims. *Id.* at *5.

Several courts have followed similar reasoning in holding that federal district courts possess jurisdiction over actions to enforce agreements settling discrimination claims brought before administrative agencies. *See e.g. Brewer v. Muscle Shoals Bd. of Educ.,*

790 F.2d 1515, 1519 (11th Cir.1986); *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1508, 1511 (11th Cir.1985); *cf. Morris v. City of Hobart*, 39 F.3d 1105, 1111–12 n. 4 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1960, 131 L.Ed.2d 852 (1995) (no federal statutory jurisdiction over post-dismissal action to enforce agreement settling prior Title VII civil action, as distinguished from actions to enforce administrative settlement agreements).

Recognizing that a breach of settlement claim constituted an action pursuant to Title VII, the *Fausto* court took the analysis one step further and observed that "... when Title VII affords relief, the civil rights law precludes other legal actions elsewhere for the same claim." *Fausto,* 16 Cl.Ct. at 753, *citing Brown,* 425 U.S. at 829, 96 S.Ct. at 1966; *see also Montalvo,* 17 Cl.Ct. at 748–49 (suit to "enforce" EEOC decision pursuant to Title VII, jurisdiction precluded). In light of these factors, the *Fausto* court concluded that the legislative assignment of Title VII actions to federal district courts precluded the assumption of jurisdiction by the United States Court of Federal Claims. *Fausto,* 16 Cl.Ct. at 753, *cited in Bowden,* No. 93–456C, slip op. at 8–9. In accord with the ruling in *Fausto,* it is concluded that this Court cannot entertain Plaintiff's claim for breach of her Title VII settlement agreement.

■ Plaintiff's attempts to salvage jurisdiction by arguing that dismissal would violate the District Court Transfer Order are misplaced. Pl.'s Opp'n at 1. Another court's jurisdictional determination cannot confer jurisdiction on this or any other court. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816–18, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988); *Clark v. United States,* 229 Ct.Cl. 570, 576–77, 1981 WL 22060 (1981) (a court always retains "... the right—indeed, the obligation—to consider its own jurisdiction ..."). Similarly, Plaintiff's assertion that Defendant failed to exercise good faith by first advocating removal, then transfer, and finally, after convincing the District Court that jurisdiction in this Court was appropriate, proceeding in this forum with a motion to dismiss, does not provide a basis for relief in this matter. *See, Clark,*

229 Ct.Cl. at 576–77, 1981 WL 22060. Although such practice indeed causes "... unnecessary waste of money and judicial resources ...", jurisdiction does not arise pursuant to equitable considerations. *Id.* (estoppel will not give rise to jurisdiction). As is true for all federal courts created by statute, this Court possesses no jurisdiction save that conferred by Congress. *See Kokkonen v. Guardian Life Insurance Co. of America,* —— U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *see also Christianson,* 486 U.S. at 818, 108 S.Ct. at 2178; *In Re United States,* 877 F.2d 1568, 1571 (Fed.Cir. 1989).

## B. *Transfer*

■ Plaintiff requests that the Court transfer this matter back to the District Court should jurisdiction be found lacking. Pl.'s Opp'n at 5–6. In an appropriate situation transfer from this Court to a federal district court may be effected pursuant to 28 U.S.C. § 1631.

In *Christianson* the Supreme Court stressed that once a court determines that it lacks jurisdiction, a transferee court must defer to such holding except in exceptional circumstances when the transfer decision was "clearly erroneous and would work a manifest injustice." *Christianson,* 486 U.S. at 817, 108 S.Ct. at 2178, *cited in A & S Council Oil Co. v. United States,* 16 Cl.Ct. 743, 749 (1989).

■ In the case at bar, the District Court came to the correct conclusion that it lacked jurisdiction. The District Court concluded that it lacked jurisdiction over Count I of the complaint because it alleged a contractual cause of action against the United States which exceeded that court's $10,000 jurisdictional damage limit pursuant to 28 U.S.C. § 1346(a)(2). Transfer Order Memo.Op. at 2. While this reason would be valid if Plaintiff truly had a breach of contract cause of action, our conclusion is to the contrary. However, the undisputed facts show that jurisdiction in the District Court was absent in this case because Plaintiff had not presented evidence that she exhausted her administrative remedies regarding both the straightforward Title VII action and the breach of

settlement agreement claim. *See* 29 C.F.R. §§ 1614.504(a), 1614.401(d) (requiring compliance with administrative process before right to sue accrues). As such, the District Court's ruling that it lacked jurisdiction was correct, albeit based upon another reason.

■ Further, Plaintiff retains the right to proceed with her claims at the administrative level. *See* 29 C.F.R. § 1614.504(c) (establishing right to bring allegations of discrimination arising subsequent to settlement of earlier discrimination complaint in new administrative complaints); *see also* 29 C.F.R. §§ 1614.504(a), 1614.401(d) (establishing administrative procedures to follow upon noncompliance by agency with settlement agreement prior to filing civil action). As set forth above, Plaintiff may bring a civil action if she remains unsatisfied after having exhausted her administrative remedies.[2] *See* 42 U.S.C. § 2000e–16; *see also Yellow Freight System,* 494 U.S. at 825–26, 110 S.Ct. at 1569–70.

Given a correct District Court's decision as to its jurisdiction, and Plaintiff's ability to proceed with her claims administratively, it would not be in the interest of justice to transfer this matter back to the District Court. *See Christianson,* 486 U.S. at 816–17, 108 S.Ct. at 2177–78.

## II. *Motion for Refund of Filing Fee*

■ Plaintiff requests a refund of the $120 fee she paid to file the instant action in this Court. She points to RCFC 84(a)(1), which provides, "where all required fees in the other court are shown to have been paid," no filing fee will be required.

Plaintiff's case does not, however, involve a simple transfer and an accompanying fee exemption as contemplated by RCFC 84(a)(1). Rather, Plaintiff commenced a suit in this Court and paid the fee when she filed her complaint on August 10, 1994. The clerk received and deposited this fee in the Trea-

sury. Only afterwards did the transfer of the previously pending District Court case take place. The remedy Plaintiff now seeks is a refund of the filing fee paid for the new Docket No. 94–520C complaint—something RCFC 84(a)(1) does not address.

Nonetheless, Plaintiff asserts that once the transfer took place, RCFC 84(a)(1) became applicable. Plaintiff contends that her filing of the new complaint in this Court some two weeks prior to the District Court's transfer action, was not her fault. She states that the District Court clerk's office had misinformed her that the Court had dismissed the case in its entirety and that no transfer was pending.[3]

The refund issue presented involves the basic constitutional principle that funds deposited into the United States Treasury become "public money" and may only be paid out pursuant to statutory appropriation. *Republic National Bank of Miami v. United States,* — U.S. —, —, 113 S.Ct. 554, 562, 121 L.Ed.2d 474 (1992); *Office of Personnel Management v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990); U.S. Const., Art. I, § 9, cl. 7. Therefore, the issue at hand is whether any appropriation covers this type of refund.

Title 31 U.S.C. § 1304, the general appropriation providing for payment of judgments against the United States, provides in pertinent part,

> "(a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when—
>
> "(1) payment is not otherwise provided for;
>
> "(2) payment is certified by the Comptroller General; and
>
> "(3) the judgment, award, or settlement is payable—

---

**2.** Plaintiff will have to recommence administrative action because this Court does not retain the authority to transfer cases over which it lacks jurisdiction to administrative agencies. *Amos v. United States,* 22 Cl.Ct. 724, 733–34 (1991) (requirement of 28 U.S.C. § 1631 that transfer be to a "court" precludes possibility that a court may transfer a matter to an administrative agency). While remand authority does exist, it may be

exercised only for matters within the Court's jurisdiction. 28 U.S.C. § 1491(a)(2).

**3.** Curiously, Plaintiff chose to rely on the representations of the District Court clerk's office instead of the Transfer Order of March 31, 1994 issued by the United States District Court judge.

"(A) under section 2414, 2517,[4] 2672, or 1677 of title 28...." 31 U.S.C. § 1304.

 However, this statute is not self-executing. The Supreme Court has held that a court may award judgment pursuant to this provision only in cases where a movant retains "... a substantive right to compensation based on the express terms of a specific statute." *OPM v. Richmond,* 496 U.S. 414, 432, 110 S.Ct. 2465, 2475, 110 L.Ed.2d 387 (1990). Thus, for refund to be proper in this case, a statute must specifically provide an appropriation to return the filing fee Plaintiff paid to the court clerk.

Defendant maintains that 31 U.S.C. § 1322(b)(2)[5] may provide the appropriation necessary to obtain a refund.[6] It provides, in pertinent part,

"(b) ... necessary amounts are appropriated to the Secretary of the Treasury to make payments from—

"the United States Government account *"Refund of Moneys Erroneously Received and Covered"* and other collections erroneously deposited that are not properly chargeable to another appropriation." 31 U.S.C. § 1322(b)(2) (emphasis added).

It has been held that funds appropriated under this statute are available for a refund of money deposited in the Treasury miscellaneous receipts fund contrary to law. *See National Presto Industries, Inc. v. United States,* 219 Ct.Cl. 626, 630, 1979 WL 10178 (1979). Analysis of the limited judicial application of this provision and comparable administrative regulations sheds light upon the factors causing a receipt or deposit to be considered erroneous. Two characteristics are often present in cases where refund has been deemed appropriate.

First, in these cases the government originally exacted the fee by mandating, either pursuant to an administrative regulation, statute or judgment, that the sums be paid into the Treasury in the first place. As such, the government has not allowed the party paying the funds any discretion to choose whether or not to pay the fee.[7] *See e.g.* 71 Comp.Gen. 464, 465 (1992) (SEC required additional late filing fee); 63 Comp.Gen. 189, 192–93 (1984) (DOE consent order provisions required payment to the Treasury); 55 Comp.Gen. 243, 244 (1975) (SEC improperly charged fees pursuant to "User Charge Statute").

Second, in cases in which refund was permissible pursuant to this statute, it has been determined, on subsequent inspection, that the original receipt of those funds took place contrary to law. *See e.g.* 71 Comp.Gen. at 466; 63 Comp.Gen. at 192–93. As such, the government never had a right to the funds which had been deposited into the Treasury. 71 Comp.Gen. at 466. In 71 Comp.Gen. 464, the SEC's General Counsel exercised statutory discretion in holding a company exempt from a securities registration filing late fee. *Id.* at 466. The Comptroller General noted that the waiver provision at issue granted the SEC discretion broad enough to "... alter the substantive right of the Commission ..." to require the payment of the fee in the first place. *Id.* at n. 3, *citing* (51 Comp.Gen. 419, 422 (1972), B–208064 (Nov. 15, 1983) (comparing narrower waiver statutes which did not grant agencies the authority to alter a substantive right to collect funds)). As receipt of the funds had been contrary to law, the Comptroller General granted a refund. *Id.*

Similarly, in 63 Comp.Gen. 189 the Department of Energy had acted contrary to statute

---

4. This provision grants an appropriation for judgments against the United States rendered in the United States Court of Federal Claims.

5. Formerly 31 U.S.C. § 725q–1.

6. Despite its opposition to the refund, Defendant offered this as a possible basis for relief in response to the Court's request for briefing on this issue.

7. An exception to this general rule may lie in an analogous line of refund cases in which plaintiffs who voluntarily made payments for services to the government were entitled to a refund when the government accepted fees for applications which were "patently invalid." See e.g. 10 Comp.Gen. 364, 365–68 (1931) (plaintiffs paid fee to file applications for "certificates of derivative citizenship" and successfully petitioned for refund). This rule is of no avail to Plaintiff. Plaintiff has not argued that her complaint was insufficient in any way.

in requiring oil companies to pay certain fees pursuant to consent orders. 63 Comp.Gen. at 192–93. Again, the collection of these fees was improper at the very time of receipt, and refund was permissible *Id.; see also* 55 Comp.Gen. 243, 244 (1975) (SEC's collection of fees was found to have been improper because it was contrary to the criteria for collection elucidated in subsequent Supreme Court decisions). As receipt of the funds was contrary to law, it followed that deposit was erroneous as well.

Unfortunately for Plaintiff, the two unifying characteristics found in these refund cases are absent from the case at bar. Plaintiff does not possess the first characteristic—that the government mandated the payment of the fee. Rather, she paid her fee for the complaint filing voluntarily. Plaintiff chose to pay and file a new complaint.[8] In fact, she did so in disregard of an outstanding District Court order indicating that her case would be transferred to this Court—in which case there would be a fee exemption under RCFC 84(a)(1). No additional fee was required for the subsequent transfer filing in Docket No. 94–557C.

The second unifying characteristic is lacking as well. When Plaintiff filed her new complaint, receipt of the $120 filing fee was appropriate. Indeed, RCFC 77(k)(2) requires the clerk to collect this fee in advance[9] of rendering the service of filing a new complaint.[10] In addition, 28 U.S.C. § 791(b) requires the clerk to "... pay into the Treasury all fees, costs and other moneys collected by him." The clerk was further bound by 31 U.S.C. § 3302(b), which provides

... an official or agent of the Government receiving money for the Government from

any source shall deposit the money in the Treasury as soon as practicable without deduction for any charge or claim. ...

31 U.S.C. § 3302(b); *Matter of: Payment of Refund Ordered by Court of Claims in National Presto Industries, Inc. and World Aerospace Corp. v. United States,* B–164766, 1979 WL 12489 (C.G.) at *3 (1979) (finding United States Court of Federal Claims' grant of 31 U.S.C. § 725q refund[11] inappropriate because 31 U.S.C. § 484 (1976)[12] had required deposit).

 Exemption from payment of the fee upon transfer of a case constitutes an exception to this general rule and is appropriate only in specifically delineated circumstances. *See* RCFC 84(a)(1). To obtain an exemption, the District Court's certified record must be received and filed by the clerk and plaintiff must present proof that payment of "required fees" was made in the transferor court. At the time Plaintiff filed her Docket No. 94–520C complaint, the District Court had not transferred its certified record, and she had not presented proof that she paid all required fees in another court. Therefore, RCFC 84(a)(1) did not apply.

Had the clerk accepted the fee and failed to file the complaint, the Plaintiff could argue that deposit was erroneous and that refund was warranted pursuant to 31 U.S.C. § 1322(b)(2). *See* 53 Comp.Gen. 580, 582 (1974) (applying administrative statute analogous to 31 U.S.C. § 1322(b)(2), deposit of permit fee was improper because agency never processed permit applications—thereby failing to provide the service requiring the fee). However, no such omission occurred here. The clerk filed and docketed Plaintiff's complaint on August 10, 1994. Plaintiff received the service for which she paid.

8. Had Plaintiff sought to avoid paying the fee, she could have moved the District Court to expedite the transfer it had ordered.

9. Title 28 U.S.C. § 2520 requires that the court impose a filing fee not exceeding $120.00, and Title 28 U.S.C. § 1926(b) grants authority to "the court and its officers" to require advance payment by rule.

10. This statutory mandate binding the clerk to collect the filing fee precludes any possible estoppel claim against the government implicit in

Plaintiff's motion for refund. *See OPM,* 496 U.S. at 432–34, 110 S.Ct. at 2475–76 (estoppel will not operate against the government in the context of actions seeking payment of money judgments contrary to statute); *see also Burnside–Ott Aviation Training Center v. United States,* 985 F.2d 1574, 1581 (Fed.Cir.1993).

11. The court had granted the refund in *National Presto,* 219 Ct.Cl. at 630, 1979 WL 10178.

12. Recodified as 31 U.S.C. § 3302.

As 31 U.S.C. § 1322(b)(2) does not apply and no other authority has been cited to support a refund of Plaintiff's filing fee, the relief sought must be denied.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

(1) Final judgment shall be entered dismissing the complaint in this matter;

(2) Plaintiff's Motion for Refund of Filing Fee is **DENIED.**

(3) No costs shall be assessed.