**William Louis TAYLOR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 05–1045 C.

United States Court of Federal Claims.

Oct. 13, 2006.

William L. Taylor, Covina, California, pro se.

Sean B. McNamara, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

SWEENEY, Judge.

Before this court is defendant's motion to dismiss plaintiff's *pro se* complaint [1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). In a January 28, 2005 order, the United States District Court for the Central District of California ("district court") transferred plaintiff's complaint to this court. Plaintiff, in his transfer complaint, makes a variety of allegations relating to claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (2000) ("Title VII"), and agreements settling several of his Title VII discrimination claims. As discussed more fully below, this court lacks subject matter jurisdiction over all of plaintiff's claims except for his claim for breach of contract. Unfortunately, plaintiff fails to state a claim for breach of contract. However, because plaintiff does have a viable claim pursuant to a "right to sue" letter issued by the Equal Employment Opportunity Commission ("EEOC"), the court, in the interest of justice, transfers plaintiff's complaint back to the district court. Only the district court possesses the authority to reinstate and re-evaluate plaintiff's Title VII discrimination claims, if it decides that course is appropriate.

### I. BACKGROUND

Plaintiff is a correctional officer with the Federal Bureau of Prisons ("BOP").[2] Compl. 2. On December 21, 1987, while em-

---

1. *Pro se* complaints, " 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

2. The facts are derived from the transfer complaint ("Compl."); the exhibits attached to the complaint ("Pl.'s Ex."); and the appendix to defendant's motion to dismiss ("Def.'s App.").

ployed at the Federal Correctional Institution ("FCI") in El Reno, Oklahoma, plaintiff filed a formal discrimination complaint with the BOP, alleging that he was not assigned to a riot control squad on the basis of his race. *Id.;* Pl.'s Ex. 3.

In June 1989, while his discrimination claim was pending with the BOP, plaintiff was transferred from the El Reno FCI to the Metropolitan Detention Center in Los Angeles, California. Compl. 2; Pl.'s Ex. 1. The "Notification of Personnel Action" reflecting the transfer and accompanying promotion indicates that "[t]ravel and transportation expenses will be paid by the government including transportation of house hold [sic] effects and dependent family members." Pl.'s Ex. 1.

On October 25, 1990, the BOP issued a "proposed disposition," finding against plaintiff on his 1987 discrimination complaint. Pl.'s Ex. 3. Plaintiff requested a hearing, which was held on November 20, 1991, before an administrative judge. *Id.* In a December 31, 1991 "recommended decision," the administrative judge found no discrimination. *Id.* As a result, on March 9, 1992, the BOP issued a "final decision" against plaintiff. *Id.* Plaintiff appealed this decision to the EEOC. *Id.*

In a March 31, 1993 decision, the EEOC reversed the ruling of the BOP and found that the BOP had discriminated against plaintiff on the basis of race. *Id.* The EEOC awarded plaintiff back pay and "other benefits due [plaintiff] had he been assigned to the riot control squad." *Id.* On July 1, 1993, an official at the El Reno FCI presented plaintiff with a check compensating him for lost overtime. Pl.'s Ex. 4.

On or before July 14, 1993, plaintiff filed a "Petition for Writ of Clarification and Enforcement" with the Office of Federal Operations at the EEOC. *Id.* According to his petition, plaintiff interpreted the 1993 EEOC decision regarding back pay to include compensation for promotions he would have received had he been assigned to the riot control squad (based upon evidence of the promotions received by other members of the riot control squad). *Id.* Plaintiff filed the petition because the BOP compensated plaintiff only for his lost overtime. *Id.;* Compl. 3. There is no evidence in the record that any action was taken on plaintiff's petition by the Office of Federal Operations.

On July 28, 1994, plaintiff and the BOP entered into a settlement agreement relating to a second discrimination complaint. Pl.'s Ex. 5, Doc. A. The agreement provided that plaintiff would withdraw his discrimination complaint if he was promoted to a permanent position of "Correctional Counselor GS-007-09" by February 18, 1995. *Id.* The agreement excluded from its coverage plaintiff's "allegation regarding storage charges." *Id.*

At some point after July 28, 1994, plaintiff contacted the Department of Veterans Affairs regarding his "home loan debt." Pl.'s Ex. 2, Doc. A. In a letter dated October 26, 1998, a representative of the Debt Management Center of the Department of Veterans Affairs confirmed plaintiff's payments totaling $29,328.05, stated an outstanding balance of $3,028.39, and informed plaintiff of his right to make a compromise offer to settle his outstanding debt. *Id.*

Also after July 28, 1994, plaintiff filed a third discrimination complaint against the BOP, alleging race and age discrimination and reprisal.[3] Pl.'s Ex. 5, Doc. B. Plaintiff asserted that the BOP failed to give him an award at a staff recall and did not keep a promise to promote him and transfer him to the FCI in Florence, Colorado. *Id.* On April 18, 2002, plaintiff and the BOP entered into another settlement agreement ("2002 settlement agreement") that, in paragraph 3, provided plaintiff with a promotion to "Correctional Counselor GS-09, Step 10" and a $500 award, in exchange for plaintiff's consent to dismiss his complaint with prejudice and to waive any further claims based upon the subject matter of the complaint. *Id.* With respect to plaintiff's obligations under the settlement agreement, paragraph 3(c) provides specifically:

> Complainant will move to dismiss, with prejudice, the complaint in the above-captioned and numbered case.... Complain-

---

**3.** The record does not contain the date on which plaintiff filed this complaint.

ant understands that the term "with prejudice" means that he cannot ever again bring suit with respect to any claim which he has made or could have made with respect to the subject matter of this lawsuit.

Pl.'s Ex. 5, Doc. B. Further, paragraph 2 contains the following language:

> [I]n order to reach a global resolution of all Complainant's complaints, appeals and claims, the parties have reached an agreement for the full and final settlement and compromise of any and all claims set out in the above-captioned and numbered case, as well as all other claims against the Federal Bureau of Prisons, its officers, employees or agents, administrative or otherwise, and any other cause of action ... arising out of or related to the allegations in Complainant's administrative complaint of discrimination.

*Id.*

Soon thereafter, plaintiff filed a complaint with the BOP alleging that the BOP had not complied with the 2002 settlement agreement. Def.'s App. 5. On May 23, 2003, the BOP determined that it had complied with the 2002 settlement agreement. *Id.* Plaintiff appealed the BOP's determination to the EEOC and in a February 3, 2004 decision, the EEOC affirmed the determination of the BOP. *Id.* Plaintiff subsequently obtained a "right to sue" letter, dated March 17, 2004, from the EEOC. *Id.*

On June 17, 2004, plaintiff filed suit in the district court. *Id.* at 6. In a January 28, 2005 order, the district court identified six claims made by plaintiff in his district court complaint: (1) enforcement or re-opening of the 2002 settlement agreement; (2) enforcement of the 1994 settlement agreement; (3) back pay stemming from the 1993 EEOC decision;

(4) reimbursement for household moving expenses; (5) reimbursement for home loan debt; and (6) reimbursement for furniture storage expenses. *Id.* at 8–14; *see also* Pl.'s Ex. 2 (documentation of plaintiff's home loan debt, household moving expenses, and furniture storage expenses). The district court found that it lacked jurisdiction over all six of plaintiff's claims. Def.'s App. 14.

With respect to the first claim, the district court held that plaintiff's attempt to re-open or enforce the 2002 settlement agreement arose from the "right to sue" letter and constituted a claim for breach of contract against the United States in an amount exceeding $10,000.[4] *Id.* at 8–9. Accordingly, the district court determined that the United States Court of Federal Claims ("Court of Federal Claims") was the proper venue and thus transferred "plaintiff's actions based on the March 17, 2004 EEOC right-to-sue letter" to this court. *Id.* at 9. The district court then found, pursuant to paragraph 2 of the 2002 settlement agreement, that plaintiff's second, fourth, fifth, and sixth claims were incorporated into that agreement and thus only could be pursued within the claim for breach of the 2002 settlement agreement. *Id.* at 9–10, 12–13. Finally, the district court held that plaintiff's third claim also was incorporated into the 2002 settlement agreement, but added that plaintiff had not exhausted his administrative remedies with respect to that claim. *Id.* at 10–12. Because the district court found that all of plaintiff's claims were incorporated into the 2002 settlement agreement and that plaintiff's claims regarding the 2002 settlement agreement constituted claims for breach of contract in an amount exceeding $10,000, the district court transferred all of plaintiff's claims to this court.[5] *Id.* at 12. The district

---

4. The Little Tucker Act provides:

 The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of ... [a]ny ... civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

28 U.S.C. § 1346(a)(2) (2000). For such claims exceeding $10,000, the Court of Federal Claims retains exclusive jurisdiction, "unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1332–33 (Fed.Cir.2004).

5. Although unstated in its order, the district court transferred the case to this court pursuant to 28 U.S.C. § 1631 (2000), which provides, in relevant part: "Whenever a civil action is filed in

court did not dismiss any of plaintiff's claims. *Id.* at 14.

Plaintiff filed a transfer complaint in this court on October 31, 2005, noting that the complaint set forth the transferred claims and that all administrative remedies had been exhausted. Compl. 1, 5. Plaintiff's claims in this court appear to be similar to the claims he alleged in the district court. Specifically, plaintiff asserts three problems with the 2002 settlement agreement: (1) the 2002 settlement agreement is "null and void" because the warden of the Metropolitan Detention Center who signed the agreement was an interested party in the underlying complaint; (2) the BOP breached the 2002 settlement agreement because it promised plaintiff a Quality Step Increase that plaintiff would have received without the benefit of the 2002 settlement agreement; [6] and (3) fraud pursuant to 18 U.S.C. § 1001.[7] *Id.* at 3–4. In addition, plaintiff claims he is owed the following expenses relating to his June 1989 transfer to the Metropolitan Detention Center: $29,328.05 for the foreclosure of his home; $5,378.34 for moving expenses paid to Graebel Companies Incorporated some time prior to June 17, 1992; and $15,496.00 for furniture storage fees incurred since June 1992. *Id.* at 2–3; Pl.'s Ex. 2. Further, plaintiff claims he is entitled to back pay stemming from his lack of advancement due to his initial, successful claim of discrimination. Compl. 3. Then, as redress for the alleged history of discrimination and retaliation by the BOP, plaintiff seeks $1,000,000 to compensate for his lost career opportunities and his and his family's pain and suffering, the enhancement of his career, and back pay pursuant to the Back Pay Act, 5 U.S.C. § 5596. *Id.* at 5. Finally, plaintiff requests a jury trial.[8] *Id.*

Defendant seeks dismissal of plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), asserting that this court does not have jurisdiction over claims arising from the 2002 settlement agreement. However, if the court finds that it has jurisdiction over some or all of plaintiff's claims, defendant requests dismissal of plaintiff's complaint for a failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). The court deemed oral argument to be unnecessary.

## II. LEGAL STANDARDS

### A. RCFC 12(b)(1) and RCFC 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). With respect to RCFC 12(b)(1), plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds,* 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim. If the court finds that it possesses jurisdiction to entertain one or all of plaintiff's claims, it still must dismiss, pursuant to RCFC 12(b)(6), any claim where "it appears

---

a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...."

**6.** On page four of his complaint, plaintiff avers that the "Settlement Contract was breached because the [BOP] had promised something to the plaintiff that the [BOP] couldn't give ...."

**7.** While plaintiff alleges fraud with respect to the 2002 settlement agreement, he does not provide

any supporting evidence. Instead, plaintiff's sole evidence of fraud relates to his 1989 transfer to the Metropolitan Detention Center. *See* Compl. 2; Pl.'s Ex. 1.

**8.** The court is without authority to grant plaintiff's request for a jury trial. "It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## B. Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the existence of subject matter jurisdiction at any time. *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004).

The ability of this court to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, provides that the Court of Federal Claims has jurisdiction over claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2000). In addition, any claim against the United States filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." *Id.* § 2501. The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir.1994).

## III. DISCUSSION

The court distilled plaintiff's *pro se* complaint and supporting documents, which raise a myriad of issues, into four groups of claims.[9] First, plaintiff alleges that he is entitled to compensation for the various moving-related expenses he incurred as a result of his 1989 transfer from El Reno, Oklahoma, to Los Angeles, California. Second, plaintiff claims that the 1993 EEOC decision entitles him to back pay for the promotions he alleges that he should have received. Third, plaintiff asserts that the 2002 settlement agreement is defective for several reasons, including the warden's lack of authority to sign the agreement, the inability of the government to give plaintiff the promised Quality Step Increase, and fraud. And, fourth,

---

**9.** In his opposition to defendant's motion to dismiss, plaintiff briefly implicates two legal theories not pled in his complaint, but fails to provide supporting arguments or evidence. Pl.'s Opp'n 3. First, defendant notes that the Fifth Amendment of the Constitution protects against the deprivation of "life, liberty, or property, without due process of law." *Id.* Second, defendant notes that the Fourteenth Amendment of the Constitution provides for "the equal protection of the laws." *Id.* Neither constitutional guarantee assists plaintiff. Although the Court of Federal Claims has jurisdiction to entertain claims founded upon the Constitution, this jurisdiction is lim-

ited to situations where the Constitution requires the payment of money damages for a violation of one of its provisions. *Murray v. United States,* 817 F.2d 1580, 1582–83 (1987); *see also Loveladies Harbor, Inc.,* 27 F.3d at 1554. Neither the Fifth Amendment's due process clause nor the Fourteenth Amendment's equal protection clause mandates the payment of money damages. *See Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir.1988); *Inupiat Cmty. of the Arctic Slope v. United States,* 230 Ct.Cl. 647, 680 F.2d 122, 132 (1982), *cert. denied,* 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982).

plaintiff seeks damages and equitable relief as compensation for the history of discrimination and retaliation he has faced as a federal employee.[10]

The district court found that all of plaintiff's claims had been incorporated into the 2002 settlement agreement, that the 2002 settlement agreement was a contract with the United States, and, thus, plaintiff's complaint properly belonged before the Court of Federal Claims.

### A. The District Court's Findings Are the Law of the Case Unless the Findings Were Clearly Erroneous or Implausible

■■■■ The law of the case doctrine prevents a court from "reopen[ing] issues decided in earlier stages of the same litigation." *Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). The doctrine applies especially to "transfer decisions of coordinate courts," because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). However, the law of the case doctrine "directs a court's discretion," but "does not limit the tribunal's power." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Thus, while a court has "the power to revisit prior decisions of its own or of a coordinate court in any circumstance," it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson,* 486 U.S. at 817, 108 S.Ct. 2166 (quoting *Arizona,* 460 U.S. at 618 n. 8, 103 S.Ct. 1382). With respect to a jurisdictional decision of a transferring court, "if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Christianson,* 486 U.S. at 819, 108 S.Ct. 2166; *see also id.* at 816 n. 5, 108 S.Ct. 2166 ("There is no reason to apply law-of-the-case principles

less rigorously to transfer decisions that implicate the transferee's jurisdiction.").

Although mindful of the law of the case doctrine and its attendant public policy underpinnings, the court cannot disregard the obligation to examine its own jurisdiction. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997). Rather, this court must determine, as a threshold matter, whether the district court's jurisdictional determination was implausible or clearly erroneous. *See, e.g., Phoenix Petroleum Co. v. U.S. Fed. Energy Regulatory Comm'n,* 95 F.3d 1555 (Fed.Cir.1996) (holding that a transferring court's dismissal and transfer of an appeal due to jurisdictional issues was plausible); *Tex. Am. Oil Corp. v. U.S. Dep't of Energy,* 44 F.3d 1557, 1565 (Fed.Cir.1995) (same); *Rodriguez v. United States,* 862 F.2d 1558, 1560 (Fed.Cir.1988) (holding that a district court's transfer decision was clearly erroneous with regard to the United States Claims Court's jurisdiction); *Doko Farms v. United States,* 861 F.2d 255, 257 (Fed.Cir.1988) (holding that a coordinate court's transfer decision was plausible). Consequently, the court will examine anew each of the four groups of claims plaintiff presented in his transfer complaint.

### B. This Court Does Not Have Jurisdiction to Entertain Plaintiff's Claims Relating to His 1989 Transfer Because These Claims Accrued More Than Six Years Ago

■■■ The United States waives its sovereign immunity under the Tucker Act only for claims that accrued within six years of the filing of a complaint. If a complaint is transferred, the date on which the complaint was filed in the original court is considered the filing date in the transferee court. 28 U.S.C. § 1631. In this case, plaintiff filed his complaint with the district court on June 17, 2004; thus, this court will consider June 17, 2004, as the date of filing for purposes of its limitations analysis. Therefore, in order for

---

**10.** Plaintiff's opposition to defendant's motion to dismiss states unambiguously: "This is an action for injunctive relief under 42 U.S.C. Sec.2000e–5(g), and for declaratory relief under 28 U.S.C. Sec[.] 2201, based upon the alleged discriminatory practices of the Bureau of Prisons, Department of Justice." Pl.'s Opp'n 4. Plaintiff also reiterates his intent to seek compensatory damages. *Id.*

plaintiff's claims to survive, they must have accrued no earlier than June 17, 1998.[11]

Plaintiff claims that defendant owes him reimbursement for three separate expenses related to his June 1989 transfer from El Reno, Oklahoma, to Los Angeles, California: $29,328.05 for the foreclosure of his home; $5,378.34 for moving expenses paid to Graebel Companies Incorporated before June 17, 1992;[12] and $15,496.00 for furniture storage fees incurred since June 1992. First, plaintiff asserts that his home in El Reno was foreclosed as a result of his transfer. However, plaintiff does not assert in his complaint or provide any evidence of the date of the foreclosure. The only document plaintiff supplied that might relate to the foreclosure was a letter dated October 26, 1998, which indicated that plaintiff had paid $29,328.05 to date on his home loan debt. Without evidence of a foreclosure date, the court cannot determine whether plaintiff's claim for reimbursement falls within the six-year limitations period. Thus, plaintiff has not met his burden of showing, by a preponderance of evidence, that the foreclosure occurred after June 17, 1998. Further, plaintiff's complaint and supporting documentation show clearly that he incurred moving expenses no later than June 17, 1992, and storage expenses in June 1992. Both of these dates are well outside the six-year limitations period. Accordingly, all of plaintiff's claims relating to his 1989 transfer are untimely under the Tucker Act.[13]

## C. Title VII Does Not Provide This Court With Jurisdiction to Entertain Plaintiff's Claim Stemming From the 1993 EEOC Decision

In his complaint, plaintiff also asserts that the BOP incorrectly interpreted the 1993 EEOC decision and that he is entitled

---

11. Plaintiff argues that the facts of this case warrant the tolling of the statute of limitations. Pl.'s Opp'n 3–4. Plaintiff bases his argument on a group of cases that concern the timely filing of a complaint with the EEOC. See, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is ... a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). These cases are inapplicable in the Court of Federal Claims, because, as discussed more fully in the next section, Title VII grants exclusive jurisdiction over discrimination complaints to federal district courts. In this court, the applicable statute of limitations is the six-year limitations period provided in 28 U.S.C. § 2501.

While the United States Supreme Court ("Supreme Court") has concluded that equitable tolling may be available in some claims against the United States, Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 93–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the United States Court of Appeals for the Federal Circuit ("Federal Circuit") consistently has declined to equitably toll the statute of limitations for claims against the United States that are governed by 28 U.S.C. § 2501. See, e.g., MacLean v. United States, 454 F.3d 1334, 1339 (Fed.Cir.2006); Wells v. United States, 420 F.3d 1343, 1347 (Fed.Cir.2005); Martinez v. United States, 333 F.3d 1295, 1318 (Fed.Cir.2003); Frazer v. United States, 288 F.3d 1347, 1352–54 (Fed.Cir.2002).

Assuming, for the sake of argument, that 28 U.S.C. § 2501 can be equitably tolled in this case, plaintiff would not qualify for such relief. As noted by the Supreme Court in Irwin,

Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

498 U.S. at 96, 111 S.Ct. 453 (footnotes omitted). In the present case, plaintiff has failed to show that a defective pleading or defendant's wrongdoing prevented him from pursuing these claims in a timely manner. In fact, plaintiff's evidence reveals that he has been aware of his claims relating to the 1989 transfer since the time he incurred the relevant expenses, see Pl.'s Ex. 2, and that he has since pursued the recovery of at least some of those expenses. See, e.g., Pl.'s Ex. 5, Doc. A.

12. As noted above, the Notification of Personnel Action represented that the government would pay plaintiff's "[t]ravel and transportation expenses ... including transportation of household [sic] effects and dependent family members." Pl.'s Ex. 1.

13. Even if the claims related to plaintiff's 1989 transfer were timely, the court otherwise lacks subject matter jurisdiction. These claims are intertwined intricately with plaintiff's Title VII discrimination claims. As discussed in the next section, this court does not possess jurisdiction to reinstate and re-evaluate claims of discrimination pursuant to Title VII.

to back pay for the promotions he should have received. Plaintiff avers that he followed the required administrative procedure for seeking clarification and enforcement of the decision through the Office of Federal Operations, "to no avail." Thus, plaintiff is requesting that this court construe and enforce the 1993 EEOC decision according to plaintiff's interpretation of that decision.

The EEOC's decision stemmed from plaintiff's complaint of racial discrimination, which was brought pursuant to Title VII. Title VII prohibits employment discrimination based upon race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e to 2000e–17. The protection of Title VII was extended to federal employees in a 1972 amendment to the Civil Rights Act of 1964. *See id.* § 2000e–16. In fact, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Title VII provides for jurisdiction in the United States district courts, but not in the Court of Federal Claims. 42 U.S.C. § 2000e–5(f)(3). Accordingly, regardless of whether plaintiff has exhausted his administrative remedies, this court does not have jurisdiction over claims stemming from the 1993 EEOC decision. *See Montalvo v. United States*, 17 Cl.Ct. 744, 747–49 (1989) (holding that the United States Claims Court, now known as the Court of Federal Claims, does not have jurisdiction to enforce EEOC decisions). Furthermore, assuming, for the sake of argument, that Title VII permitted this court to entertain lawsuits to enforce EEOC decisions, plaintiff's claim for back pay would be barred by this court's six-year statute of limitations.[14]

## D. Title VII Does Not Grant this Court Jurisdiction to Entertain Plaintiff's Claims for Damages and Career Enhancement as Compensation for the Alleged History of Discrimination and Retaliation

■■■ Plaintiff also seeks monetary damages and the enhancement of his career as compensation for the history of discrimination and retaliation he has faced from the BOP. Specifically, with regard to monetary damages, plaintiff seeks compensation for his lost career opportunities, compensation for his and his family's pain and suffering, and back pay pursuant to the Back Pay Act. These claims for damages arise clearly from allegations of discrimination. As mentioned above, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," *Brown*, 425 U.S. at 835, 96 S.Ct. 1961, and only grants jurisdiction for such claims to the United States district courts. 42 U.S.C. § 2000e–5(f)(3). Consequently, this court has no jurisdiction to entertain these claims.[15]

In sum, this court does not have jurisdiction over three groups of plaintiff's claims if they are examined apart from the 2002 set-

**14.** Plaintiff relies upon the Back Pay Act, 5 U.S.C. § 5596, as a basis to recover back pay. However, the Back Pay Act is not a jurisdictional statute. *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed.Cir.1984). Instead, another provision of law must mandate the "payment of money to the employee for the 'unjustified or unwarranted personnel action'...." *Id.* (quoting the Back Pay Act). In this case, the other provision of law would be Title VII, and this court does not have jurisdiction to entertain claims pursuant to Title VII.

**15.** Further, this court does not have jurisdiction to award damages for pain and suffering because such a claim sounds in tort, and this court cannot entertain tort claims. 28 U.S.C. § 1491(a)(1). In addition, to the extent that the complaint can be construed as requesting plaintiff's appointment to a higher-paying position within the BOP, or, alternatively, money damages for anticipated lost wages flowing from the BOP's failure to appoint plaintiff to a higher-paying position within the BOP, plaintiff cannot prevail. This court cannot grant any form of relief, including damages, for the loss of a position to which a federal employee has not been appointed. *Testan*, 424 U.S. at 402, 96 S.Ct. 948; *Westover v. United States*, 71 Fed.Cl. 635, 640 (2006); *Tierney v. United States*, 168 Ct.Cl. 77, 80, 1964 WL 8600 (1964). Although not invoked by plaintiff, 28 U.S.C. § 1491(a)(2) permits the court to "issue orders directing restoration to office or position" or directing "placement in appropriate duty ... status." But, as explained above, even though plaintiff claims that but for racial discrimination, his career with the BOP would have flourished, this court lacks general equitable power. *Doe v. United States*, 372 F.3d 1308, 1313–14 (Fed.Cir.2004); *see also First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1294 (Fed.Cir.1999).

tlement agreement.[16] Plaintiff's fourth group of claims, relating to the 2002 settlement agreement, requires a more detailed analysis.

### E. The Court of Federal Claims Possesses Jurisdiction to Enforce Title VII Settlement Agreements

Plaintiff asserts several defects with the 2002 settlement agreement, including the warden's lack of authority to sign the agreement, the inability of the government to give plaintiff the promised Quality Step Increase, and fraud. Reading the complaint in the light most favorable to this *pro se* plaintiff, plaintiff requests that this court (1) rescind the settlement agreement and (2) award monetary damages in the amount of $1,000,000 for a breach of the settlement agreement.[17] Plaintiff asserts that he has exhausted his administrative remedies and the district court's order confirms his assertion.

The 2002 settlement agreement was the end result of plaintiff's complaint against the BOP alleging race and age discrimination and reprisal in violation of Title VII. *See* Pl.'s Ex. 5, Doc. B, at 1. As stated above, Title VII "provides the exclusive judicial remedy for *claims of discrimination* in federal employment." *Brown*, 425 U.S. at 835, 96 S.Ct. 1961 (emphasis added). However, *Brown* does not address whether an action challenging an agreement settling a discrimination claim can properly be brought in the Court of Federal Claims. *See Westover*, 71 Fed.Cl. at 638–39 (finding that the United States Claims Court in *Fausto v. United States*, 16 Cl.Ct. 750, 753 (1989), erroneously applied

the holding of *Brown* to Title VII settlement agreements).

### 1. Title VII's Comprehensive Scheme of Review Does Not Preclude Tucker Act Jurisdiction in the Court of Federal Claims Over Title VII Settlement Agreements

■ Tucker Act jurisdiction is preempted "where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum. . . ." *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 549–50 (Fed.Cir.1994) (applying this rule to provisions of the Medicare Act); *see also United States v. Fausto*, 484 U.S. 439, 453–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (Civil Service Reform Act); *Wilson v. United States*, 405 F.3d 1002, 1016 (Fed.Cir.2005) (Medicare Act); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed.Cir.2001) (Controlled Substances Act). There is no binding precedent on this court addressing whether Title VII constitutes a "precisely drawn, comprehensive and detailed scheme of review" that preempts Tucker Act jurisdiction.[18] But, prior decisions of the Court of Federal Claims and its predecessor court, the United States Claims Court, have included such an analysis and have concluded that Title VII precludes Tucker Act jurisdiction, even when the lawsuit concerns the breach of a settlement agreement.

In *Fausto*, plaintiff sought to enforce an agreement settling Title VII discrimination claims. 16 Cl.Ct. 750. Plaintiff claimed that the government breached the settlement agreement by not issuing an Official Notice of Resignation and that the failure to issue

---

16. The district court found that these claims were incorporated into the 2002 settlement agreement and thus did not discuss any independent bases for this court's jurisdiction over those claims in its January 28, 2005 order. *See* Def.'s App.1–14.

17. As explained below, plaintiff seeks mutually-exclusive remedies. If a court rescinds a settlement agreement, there is no agreement that can be breached. Thus, the court will construe plaintiff's complaint as arguing in the alternative.

18. The Court of Federal Claims is bound by precedent of the Supreme Court and the Federal Circuit. *See FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 140, 60 S.Ct. 437, 84 L.Ed. 656 (1940)

("[A] lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid at rest."). On the other hand, prior decisions of the Court of Federal Claims, "while persuasive, do not set binding precedent for separate and distinct cases" in the Court of Federal Claims. *W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed.Cir.1994). Further, decisions of other federal appellate courts, while "afforded great weight," are not binding on the Federal Circuit, *Admiral Fin. Corp. v. United States*, 378 F.3d 1336, 1340 (Fed.Cir.2004), or on the Court of Federal Claims, *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1371 (Fed.Cir.2000).

the notice prevented him from obtaining other federal employment. *Id.* at 751. Initially, the court noted that Title VII was "the comprehensive, exclusive, and preemptive remedy for federal employees alleging discrimination." *Id.* at 753 (citing *Brown,* 425 U.S. at 829, 96 S.Ct. 1961). The court concluded that plaintiff's settlement agreement was "the direct result of his discrimination claim" and because Title VII afforded relief to plaintiff in federal district court, the United States Claims Court was precluded from exercising jurisdiction. *Id.* The court stated that plaintiff's claim was not "an independent contract claim, but a Title VII discrimination claim." *Id.*

Subsequently, in *Lee v. United States,* plaintiff claimed that the government failed to pay retroactive wages and adjust her performance rating as required by her Title VII settlement agreement. 33 Fed.Cl. 374, 376 (1995). Following the reasoning in *Fausto,* the Court of Federal Claims ruled that it was precluded from entertaining a claim based on a Title VII settlement agreement. *Id.* at 378–80. Next, in *Mitchell v. United States,* plaintiff sought to recover back wages and interest that he believed the government owed him pursuant to an agreement settling his discrimination claims.[19] 44 Fed.Cl. 437, 438 (1999). The Court of Federal Claims followed the reasoning in *Fausto* and *Lee* in finding that it lacked jurisdiction over a Title VII settlement agreement. *Id.* at 439. Finally, in *Taylor v. United States,* plaintiff alleged that the government violated an agreement settling his discrimination claims because his "craft seniority date" did not match his "enter on duty date." 54 Fed.Cl. 423, 424 (2002). Following the reasoning of *Fausto, Lee,* and *Mitchell,* the Court of Federal Claims found that it lacked jurisdiction over plaintiff's claims. *Id.* at 425–26.

However, as noted in *Westover,* the three cases of the Court of Federal Claims that followed the reasoning in *Fausto–Lee, Mitchell,* and *Taylor*—did not address an important holding of the Supreme Court in *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511

U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). *See Westover,* 71 Fed.Cl. at 639. Although it does not address Title VII specifically, the Supreme Court in *Kokkonen* held that a settlement agreement is "more than just a continuation or renewal" of the underlying dispute and thus requires its own, separate basis for jurisdiction. 511 U.S. at 378, 114 S.Ct. 1673. In other words, settlement agreements must be analyzed separate from the statutory schemes from which they arose. Thus, following the reasoning set forth in *Westover,* this court departs from the prior holdings of *Taylor, Mitchell, Lee,* and *Fausto,* and finds that Title VII's "precisely drawn, comprehensive and detailed scheme of review" does not preclude this court's enforcement of settlement agreements arising from Title VII disputes.

**2. Although Title VII Does Not Preclude This Court From Exercising Jurisdiction Over Title VII Settlement Agreements, the Case Law Is Unsettled as to Whether the Tucker Act Allows the Court of Federal Claims to Exercise Jurisdiction Over Such Claims**

▆▆▆ The district court ruled that the Tucker Act provides the Court of Federal Claims with jurisdiction over plaintiff's claims because the 2002 settlement agreement constituted a contract between plaintiff and the United States. While Title VII does not preclude this court from entertaining money claims arising from Title VII settlement agreements, there is no binding precedent permitting this court to exercise jurisdiction over such claims under the Tucker Act. However, the Federal Circuit has addressed a similar issue in *Massie v. United States,* 166 F.3d 1184 (Fed.Cir.1999).

In *Massie,* the Federal Circuit held that the Military Claims Act ("MCA") did not deprive this court of jurisdiction to entertain plaintiff's claims stemming from an agreement to pay a MCA claim. 166 F.3d at 1188. The Federal Circuit rejected defendant's argument that the "complete and com-

---

**19.** In *Mitchell,* plaintiff's underlying discrimination claim was based on the Rehabilitation Act of 1973. 44 Fed.Cl. at 438. The remedies provided

by Title VII "are specifically made available to a claimant under the Rehabilitation Act." *Id.* at 439.

prehensive" nature of the statutory scheme precluded the Court of Federal Claims from exercising jurisdiction because the MCA "does not address the breach of agreements to pay MCA claims." *Id.* The Federal Circuit explained that plaintiff was not attempting to challenge the substance of the agreement but was trying only to enforce its terms.[20] *Id.* at 1189.

On the other hand, the specific issue in this case has been addressed by the Court of Federal Claims on several occasions, and in only one of these decisions, *Westover,* did the Court of Federal Claims find that it had jurisdiction.[21] *See Westover,* 71 Fed.Cl. at 640; *Schnelle v. United States,* 69 Fed.Cl. 463 (2006); *Griswold v. United States,* 61 Fed.Cl. 458 (2004); *Taylor,* 54 Fed.Cl. at 423; *Mitchell,* 44 Fed.Cl. at 437; *Lee,* 33 Fed.Cl. at 374; *Fausto,* 16 Cl.Ct. at 750. While not binding on this court, these decisions are instructive.

Following the decisions in *Fausto, Lee, Mitchell,* and *Taylor,* the Court of Federal Claims next addressed its jurisdiction over Title VII settlement agreements in *Griswold.* In *Griswold,* plaintiffs contended that the government breached the agreements resolving their discrimination claims, which provided that plaintiffs had the right to be considered for future government employment, that plaintiffs had the right to take the civil service examination, and that the government would notify plaintiffs' counsel of the date and time of the next civil service examination. 61 Fed.Cl. at 459. Plaintiffs sought compensatory damages in the amount they would have earned had they been employed by the government assuming they had taken and passed the first possible civil service examination. *Id.* at 463. Plaintiffs also sought equitable relief, including "instatement, future notice, test access, [and] front pay." *Id.* The court declined to depart from the holding in *Fausto, Lee,* and *Mitchell* that the Court of Federal Claims "lacks jurisdiction to hear claims alleging the breach of a

Title VII settlement agreement due to the comprehensive statutory scheme established under Title VII of the Civil Rights Act." *Id.* at 465. Despite this determination, the court continued its analysis "to determine if [plaintiffs'] claims could be viewed as contract actions for money damages contemplated by the Tucker Act." *Id.* The court noted that, in order for the court to exercise its jurisdiction, plaintiffs' claims must stem from a "substantive right enforceable against the United States for money damages...." *Id.* at 465–66 (citing *Testan,* 424 U.S. at 398, 96 S.Ct. 948). The court concluded that the right to notice of the next civil service examination "cannot ... be 'fairly interpreted' as requiring the government to pay money for the 'damages sustained.'" *Id.* at 466 (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)). The court further noted that the other relief sought by plaintiffs—"installation into positions of employment"—constituted equitable relief beyond its authority to award. *Id.* at 466–67. Accordingly, the court found no basis for exercising its Tucker Act jurisdiction. *Id.* at 467.

The next decision of the Court of Federal Claims addressing jurisdiction over claims to enforce Title VII settlement agreements took a more narrow approach. In *Schnelle,* plaintiff alleged that the government breached two Title VII settlement agreements by violating the confidentiality provisions, failing to provide a neutral job reference, and firing plaintiff for misconduct after the settlement agreements were in force. 69 Fed.Cl. at 464. Plaintiff sought damages in the amount of $800,000. *Id.* The court examined case law from both the Court of Federal Claims and the United States Court of Appeals for the District of Columbia Circuit ("D.C.Circuit") and concluded that "[w]hether this court has jurisdiction over a claim for breach of a Title VII agreement remains an open question." *Id.* at 465 n. 1 (citing *Griswold, Taylor,* and *Hansson v. Norton,* 411 F.3d 231 (D.C.Cir. 2005)). However, the court in *Schnelle* did not resolve this question because it deter-

---

20. The facts in *Massie* are unlike those in the present case. While the plaintiff in *Massie* sought only to enforce the terms of the settlement agreement, in this case, plaintiff challenges the government's ability to execute the agreement as

well as the underlying terms of the settlement agreements.

21. In rendering its January 28, 2005 order, the district court did not rely on any of these cases.

mined that it lacked jurisdiction based upon "plaintiff's failure to present a claim for actual money damages." *Id.* at 465–67. Specifically, the court found that the settlement agreements did not "mandate the payment of monetary compensation by the government to the plaintiff for a breach of the agreements," but instead required plaintiff to contact the appropriate government office to seek compliance or reinstate the discrimination complaint. *Id.* at 466–67.

The most recent decision of the Court of Federal Claims concerning jurisdiction over Title VII settlement agreements departs from the prior holdings of this court. In *Westover,* plaintiff asserted that the government breached the agreement settling his post-termination discrimination claims by failing to provide neutral job references. 71 Fed.Cl. at 637. Plaintiff sought damages arising from the loss of his previous job, including reinstatement, back pay, reinstatement of benefits, attorney's fees, and costs. *Id.* As noted above, the court found that it had jurisdiction to entertain breach of contract claims based on Title VII settlement agreements. *Id.* at 640. However, the court found, pursuant to RCFC 12(b)(6), that it could not grant the relief requested by plaintiff. *Id.* The court explained that "to recover damages for a breach of contract, plaintiff 'must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of that contract, (3) a breach of that duty, and (4) damages caused by the breach.' " *Id.* (citing *San Carlos Irrigation & Drainage Dist. v. United States,* 877 F.2d 957, 959 (Fed.Cir.1989)). Plaintiff was able to show a valid contract, defendant's duty to provide neutral job references, and defendant's failure to provide the required neutral job references. 71 Fed.Cl. at 640. However, plaintiff did not show that defendant's failure to provide neutral job references caused his claimed damages. *Id.* Rather, plaintiff sought damages relating to the loss of his old position, but not for his inability to obtain a new position. *Id.* Because plaintiff's loss of his old job was squarely within the purview

of Title VII, the court held that it could not award any damages caused by that loss. *Id.*

Because there is no case law directly on point from the Federal Circuit, this court also looked for guidance from other circuits. As cited in *Schnelle,* the specific issue in this case has been addressed by the D.C. Circuit.[22] In *Hansson,* the D.C. Circuit considered whether plaintiff could bring an action in federal district court to enforce a provision of an agreement settling plaintiff's Title VII claims [23] that allowed plaintiff to recover reasonable attorney's fees and costs. 411 F.3d at 232–33. The D.C. Circuit held "that the district court lacked jurisdiction over [plaintiff's] complaint because it was a contract claim against the United States for more than $10,000, over which the Court of Federal Claims has exclusive jurisdiction under the Tucker Act . . . ." *Id.* at 232. The D.C. Circuit explained that because plaintiff's "claim for attorney's fees neither requires an interpretation of Title VII with respect to her discrimination complaint nor seeks equitable relief, it involves 'only straightforward contract issues' that belong in the Court of Federal Claims." *Id.* The D.C. Circuit distinguished *Griswold, Lee,* and *Fausto* "on the ground that they involved claims for equitable relief that the Court of Claims lacked jurisdiction to grant," and found that the Federal Circuit's decision in *Massie* supported its holding. *Id.* at 236–37.

Summing up the above discussion, there is no case law from the Federal Circuit addressing whether the Court of Federal Claims can exercise jurisdiction over Title VII settlement agreements, and, if so, under what circumstances. Moreover, there appears to be a lack of consensus among the judges of this court on this issue. However, the court is persuaded that the reasoning of *Westover* is the better view; namely, that the Court of Federal Claims can entertain actions to enforce Title VII settlement agreements. Thus, in this respect, the court agrees with the jurisdictional conclusion of

---

22. In rendering its January 28, 2005 order, the district court did not rely on the D.C. Circuit's decision in *Hansson.*

23. The settlement agreement also concerned claims of age discrimination pursuant to the Age Discrimination in Employment Act of 1967. 411 F.3d at 232.

the district court. Unfortunately, this conclusion fails to assist plaintiff because he seeks relief that this court cannot award.

**F. Although the Court of Federal Claims Possesses Jurisdiction to Enforce Title VII Settlement Agreements, This Court Does Not Have the Power to Award the Relief Sought by Plaintiff**

 To fall within the jurisdiction of the Court of Federal Claims, plaintiffs must be entitled to "actual, presently due money damages from the United States." *King*, 395 U.S. at 3, 89 S.Ct. 1501. Since the Tucker Act itself does not provide a substantive right to money damages, plaintiffs must identify another source entitling them to an award of money damages from the United States. *Loveladies Harbor, Inc.*, 27 F.3d at 1554.

The Tucker Act recognizes explicitly that express or implied contracts with the United States can provide the basis for jurisdiction in this court. 28 U.S.C. § 1491(a)(1). Plaintiff's 2002 settlement agreement is an express contract with the United States.[24] *Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed.Cir.1988). The contract itself does not need to be money-mandating because money damages are the default remedy for a breach of contract. *See Sanders v. United States*, 252 F.3d 1329, 1334 (Fed.Cir.2001) (holding that money damages are the default remedy for a government contract); *Stovall*, 71 Fed. Cl. at 700 (noting that the Tucker Act requirement that claims must be payable in money "is met by a simple presumption— that damages will be available upon a breach" and that "there is no generic requirement under the Tucker Act that contracts must include specific language indicating that damages will be paid upon a breach"); *Westover*, 71 Fed.Cl. at 639–40 (finding that "plaintiff is not required to show that the contract is money mandating"); *Chevron U.S.A., Inc. v. United States*, 71

Fed.Cl. 236, 256–62 (2006) (discussing whether contracts with the United States must mandate the payment of money damages to fall under the jurisdiction of the Court of Federal Claims); *see also Martinez v. United States*, 333 F.3d 1295, 1303–04 (Fed.Cir. 2003) ("The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders."). *But see Schnelle*, 69 Fed.Cl. at 466–67 (finding that the settlement agreements did not mandate the payment of money damages for breach of the settlement agreements). Thus, plaintiffs can pursue common law breach of contract claims in this court. *See, e.g., Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060 (Fed.Cir. 2001) (affirming a decision of the Court of Federal Claims awarding common law contract damages); *Westover*, 71 Fed.Cl. at 640 (outlining the four prongs of a breach of contract claim).

In this case, the court can construe plaintiff's complaint, on its face, to allege a common law breach of contract claim, and to request damages in the amount of $1,000,000. As noted above, plaintiff must show the existence of a valid contract, a duty arising from that contract, a breach of that duty, and that the breach caused the damages claimed by plaintiff. *Westover*, 71 Fed.Cl. at 640. Plaintiff fails to make the required showing on two fronts. First, one of plaintiff's arguments in relation to the 2002 settlement agreement is that the agreement is "null and void" because the warden who signed the agreement was an interested party in the underlying complaint. Compl. 3–4. If the 2002 settlement agreement is "null and void," plaintiff is unable to prove the existence of a

---

**24.** The government acts in its proprietary capacity, not its sovereign capacity, when it enters into agreements settling discrimination claims. *See Stovall v. United States*, 71 Fed.Cl. 696, 701–02 (2006). The Tucker Act grants jurisdiction to the Court of Federal Claims over claims relating to those contracts made in the government's proprietary capacity. *See id.* at 698–99. However, Congress can, and often does, statutorily preempt jurisdiction. *Id.* at 700–01. The court

in *Stovall* cites *Taylor* and *Mitchell* as examples of such preemption in the Title VII realm. *Id.* at 701. But, as previously explained, this court has departed from the holdings in *Taylor* and *Mitchell*, which rely on the Supreme Court's decision in *Brown*. The court shares the view espoused in *Westover* that the holding in *Brown* does not preclude the Court of Federal Claims from entertaining suits to enforce Title VII settlement agreements.

valid contract. But, assuming the 2002 settlement agreement is a valid contract, plaintiff nevertheless fails to provide any evidence that the government breached the contract. Specifically, plaintiff does not allege that the government failed to perform any of its duties under the 2002 settlement agreement. Indeed, all of the evidence indicates that the government satisfied its contractual obligations. Thus, plaintiff fails to state a claim for breach of contract.

 Plaintiff's allegations instead amount to a claim that the 2002 settlement agreement is void or invalid. As such, the relief sought by plaintiff would be rescission of the settlement agreement and not money damages. "Rescission has the effect of voiding a contract from its inception, *i.e.*, as if it never existed. It is an equitable doctrine which is grounded on mutual mistake, fraud, or illegality in the formation of the contract." *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1345 (Fed.Cir.2000) (citations omitted). However, this court cannot award an equitable remedy in the absence of a viable claim for money damages. *See, e.g., Pauley Petroleum Inc. v. United States*, 219 Ct.Cl. 24, 591 F.2d 1308, 1315–16 (1979) (noting that while the Court of Claims had "no jurisdiction to grant specific equitable relief," it could employ equitable doctrines in arriving at a monetary judgment). Thus, in the absence of a claim for money damages for breach of contract, this court cannot fashion a remedy for plaintiff. Clearly, the court cannot rescind the 2002 settlement agreement.[25] Accordingly, the Court of Federal Claims does not have the power to award the relief sought by plaintiff. To the extent that the district court's January 28, 2005 order may be construed as finding that the Court of Federal Claims possesses the authority to award plaintiff equitable relief relating to the 2002 settlement agreement, or to reinstate and re-evaluate plaintiff's Title VII discrimination claims, this court is not in accord.

### G. It Is in the Interest of Justice to Transfer Plaintiff's Complaint Back to the District Court

Having determined that the Court of Federal Claims lacks jurisdiction to reinstate and evaluate plaintiff's discrimination claims, the court must next determine how to dispose of plaintiff's complaint. The transfer statute, 28 U.S.C. § 1631, mandates transfer if (1) the transferring court lacks jurisdiction, (2) the transfer is in the interest of justice, and (3) the transferee court is a court in which the complaint could have been filed at the time the complaint actually was filed. The court is mindful that the Federal Circuit discourages retransfer of cases. *Rodriguez*, 862 F.2d at 1560. However, there is no prohibition against the return of a transferred case. *Id.* But, such a transfer should occur only in exceptional circumstances. *Christianson*, 486 U.S. at 819, 108 S.Ct. 2166.

In deciding whether this case presented the exceptional circumstances necessary to allow for the retransfer to the district court, the court considered the effect of the law of the case doctrine. The district court was correct that the Court of Federal Claims possesses jurisdiction over breach of Title VII settlement agreements, but plaintiff's transfer complaint fails to advance such a claim. Rather, plaintiff seeks reinstatement of his Title VII discrimination claims, and this court is not the proper venue for such an action.

The court also considered the issue of futility. Indeed, one of the critical questions to be decided is whether the district court lacks or would again find that it lacks jurisdiction. Here, transfer back to the district court would not be futile. As evidenced by the district court's order, plaintiff is in possession of a "right to sue" letter, dated March 17, 2004, from the EEOC. Plaintiff did not submit a copy of this letter as evidence in this proceeding and thus the court has no knowledge of the scope of plaintiff's right to sue the BOP.[26] But, the district court determined

---

**25.** In essence, plaintiff requests that the court reinstate his Title VII discrimination claims. The controlling statute provides that this relief is beyond the court's jurisdiction. To the contrary,

plaintiff's remedy lies exclusively in federal district court. 42 U.S.C. § 2000e–5(f)(3).

**26.** According to EEOC regulations, the "right to sue" letter must contain the following information:

that plaintiff's claim to enforce or re-open the 2002 settlement agreement was encompassed in the "right to sue" letter. While this court has determined that plaintiff has failed to state a claim for enforcement of the 2002 settlement agreement, plaintiff may be able to pursue his requested equitable relief of rescission in another forum. Unfortunately for plaintiff, the Court of Federal Claims is not the appropriate forum. This finding is at odds with the holding of the district court that it lacks jurisdiction over all of plaintiff's claims, which leaves this court in a quandary. It is reluctant to dismiss all of plaintiff's claims because plaintiff has a valid "right to sue" letter, but it appears that transferring the case back to the district court may be futile. However, in the end, the court is guided by the language of 28 U.S.C. § 1631, which requires transfer "if it is in the interest of justice." Plaintiff is entitled to his day in court. Thus, the court transfers the case back to the district court to permit the district court to consider whether it may exercise jurisdiction over the contents of the "right to sue" letter.

### IV. CONCLUSION

Plaintiff enumerated a variety of claims in his transfer complaint. However, the Court of Federal Claims possesses jurisdiction over only one of those claims—the breach of contract claim relating to the 2002 settlement agreement. Plaintiff's remaining claims arise from his allegations of discrimination, which, pursuant to Title VII, fall within the exclusive province of the federal district courts. Accordingly, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss. The court **GRANTS** defendant's motion to dismiss pursuant to RCFC 12(b)(6) with respect to plaintiff's claim for breach of the 2002 settlement agreement, and, because plaintiff retains a viable claim pursuant to his "right to sue"

(1) Authorization to the aggrieved person to bring a civil action under title VII or the ADA pursuant to section 706(f)(1) of title VII or section 107 of the ADA within 90 days from receipt of such authorization;
(2) Advice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate;

letter, the court **TRANSFERS** the remaining claims back to the district court.

**IT IS SO ORDERED.**

(3) A copy of the charge;
(4) The Commission's decision, determination, or dismissal, as appropriate.
29 C.F.R. § 1601.28(e) (2005).